**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LIBERTARIAN PARTY OF PENNSYLVANIA, *et al.*,<br><br>　　　　　　　　　　*Plaintiffs*,<br><br>　　　v.<br><br>TOM WOLF, in his official capacity as Governor of Pennsylvania, *et al.*<br><br>　　　　　　　　　　*Defendants*. | )<br>)<br>)<br>)　　Case No. <u>2:20-cv-2299</u><br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Pursuant to Federal Rules of Civil Procedure 65(a) and (b), and in view of the public health crisis precipitated by the coronavirus pandemic known as COVID-19 and the ensuing emergency measures adopted by the Commonwealth of Pennsylvania, Plaintiffs Libertarian Party of Pennsylvania ("LPPA"), Constitution Party of Pennsylvania ("CPPA"), Green Party of Pennsylvania ("GPPA"), Steve Scheetz, Kevin Gaughen, Alan Smith, Timothy Runkle, Bob Goodrich and Justin Magill[1] respectfully move the Court to enter a temporary restraining order and/or a preliminary injunction that prohibits Defendants from enforcing the provisions of the Pennsylvania Election Code that require Plaintiffs, as a condition of qualifying for the general election ballot, to collect a specified number of voters' signatures on nomination papers during a period extending from February 19, 2020 until the filing deadline of August 3, 2020.  Plaintiffs specifically request that the Court enjoin Defendants from enforcing 25 Pa. Stat. Ann. §§ 2911 (petitioning requirement) and 2913(b) – (c) (petition circulation period) as applied to Plaintiffs in the 2020 election cycle.[2] Further, Plaintiffs request that the Court direct Defendants to: (1) accept

---

[1] Plaintiffs' Verified Complaint incorrectly identifies Sheri Miller as a plaintiff.  (Verified Complaint, Dckt. No. 1, at ¶ 16.) As the caption correctly indicates, Ms. Miller is not a plaintiff in this action.

[2] On February 1, 2018, this Court entered an order enjoining enforcement of § 2911(b) and establishing new signature

Plaintiffs LPPA's, CPPA's and GPPA's candidates' nomination papers for the November 3, 2020 general election without requiring supporting signatures from voters; and (2) place Plaintiffs LPPA's, CPPA's and GPPA's candidates on Pennsylvania's November 3, 2020 general election ballot.

Plaintiffs certify that Timothy Gates, Chief Counsel of the Commonwealth of Pennsylvania Governor's Office of General Counsel has agreed to accept service of process on Defendants' behalf, and that Attorney Gates has been contacted and provided copies of the Complaint (together will all Exhibits), this Motion, and Plaintiffs' Proposed Order. Plaintiffs have requested that Attorney Gates accept service of process on Defendants via electronic mail.

Respectfully submitted,

/s/Drew Gray Miller

Drew Gray Miller, Esq.
PA ID: 207830
Anderson & Labovitz, LLC
428 Forbes Ave., Suite 1901
Pittsburgh, PA 15219
Mobile: 412-760-3286
Fax: 412-291-1001
dmiller@PaLawFirm.com
*Counsel of Record*

Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202-248-9294
oliverhall@competitivedemocracy.org
*Pro Hac Vice Pending*

Mark R. Brown
303 E. Broad Street
Columbus, OH 43215
614-236-6590
mbrown@law.capital.edu
*Pro Hac Vice Pending*

Attorneys for Plaintiffs

---

requirements that apply until such time as the Legislature enacts and the Governor signs legislation amending that provision. *See* Order, *Constitution Party of Pa. v. Aichele*, No. 12-2726, Doc. No. 115 (E.D. Pa. February 1, 2018) (attached to Plaintiffs' Verified Complaint as Exhibit A). No such legislation has been enacted and this Court's February 1, 2018 order remains in effect. As set forth herein, Plaintiffs seek further relief, for the 2020 election cycle only, due to the practical impossibility and illegality of petitioning under Pennsylvania law as currently applied.

**UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| LIBERTARIAN PARTY OF PENNSYLVANIA, *et al.*, <br><br>          *Plaintiffs*, <br><br>    v. <br><br> TOM WOLF, in his official capacity as Governor of Pennsylvania, *et al.* <br><br>         *Defendants*. | ) ) ) ) ) ) ) ) ) ) ) ) )   Case No. <u>2:20-cv-2299</u> |

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' EMERGENCY MOTION FOR
TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION**

### Introduction and Factual Background

The COVID-19 pandemic has given rise to an extraordinary set of circumstances in Pennsylvania and nationwide. In an effort to contain the virus and protect the public health, the Commonwealth of Pennsylvania has implemented several emergency measures that, although perhaps reasonable in light of the public health crisis, make it impossible for Plaintiffs and other citizens to comply with the statutory procedures they must follow to participate in Pennsylvania's electoral processes. In particular, as voters, petition circulators, candidates and political bodies in Pennsylvania, Plaintiffs are required by law to obtain voters' signatures on nomination papers to qualify their respective candidates for placement on Pennsylvania's November 3, 2020 general election ballot. Under the emergency measures now in place, however, Plaintiffs cannot lawfully comply with these requirements.

On March 6, 2020, Governor Wolf proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c). *See* "Proclamation of Disaster Emergency" (March 6, 2020), *available at* https://www.governor.pa.gov/wp-content/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf (accessed May 13, 2020). Thereafter, Governor Wolf issued a number of executive orders that imposed sweeping

restrictions on virtually every aspect of citizens' daily life and activities.  By an order entered on March 19, 2020, which took effect on March 21, 2020, Governor Wolf required the closure of all "non-life sustaining businesses" – including "political" organizations – and provided for "enforcement actions" to be taken against businesses that fail to comply.  *See* "Order of the Governor of Pennsylvania Regarding the Closure of All Businesses that are not Life Sustaining" (March 19, 2020).[1]  On March 23, 2020, Governor Wolf issued a "stay at home" order effective until April 6, 2020, which required that "all individuals" residing in several counties across the Commonwealth "stay at home except as needed to access, support, or provide life sustaining business, emergency, or government services," and that individuals who leave their homes "must employ social distancing practices as defined by the Centers for Disease Control and Prevention." The order further provided that "gatherings of individuals outside of the home are generally prohibited except as may be required to access, support or provide life sustaining services." *See* "Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home" (March 23, 2020).[2]

Several subsequent orders applied the terms of the Governor's stay at home order to several more counties.  Then, on April 1, 2020, Governor Wolf entered a statewide "stay at home" order, to remain in effect until April 30, 2020.  *See* "Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home" (April 1, 2020).[3]  On April 22, 2020, Governor Wolf instituted a process to "reopen Pennsylvania," to commence on May 8, 2020, pursuant to which each county in the Commonwealth would be designated as in a "red," "yellow" or "green" phase.[4]  Counties in red phase remain under the stay at home order until at least June 4, 2020; in

---

[1] https://www.scribd.com/document/452416027/20200319-TWW-COVID-19-Business-Closure-Order.
[2] https://www.scribd.com/document/452929592/03-23-20-TWW-COVID-19-Stay-at-Home-Order.
[3] https://www.scribd.com/document/454418389/04-01-20-GOV-Statewide-Stay-at-Home-Order.
[4] https://www.governor.pa.gov/newsroom/gov-wolf-reopening-targeted-for-may-8-in-north-central-northwest/ and https://www.governor.pa.gov/process-to-reopen-pennsylvania/.

yellow phase counties, the stay at home order is lifted but "large gatherings of more than 25" remain prohibited, indoor recreation, personal care facilities and all entertainment facilities must remain closed, and restaurants and bars are limited to carry-out only service.[5]  Further, social distancing – maintaining at least six feet from other individuals – is required in yellow phase counties.[6]  To date, all counties in Pennsylvania are designated as red phase or yellow phase.

Petitioning to qualify candidates and Political Bodies for Pennsylvania's November 3, 2020 general election ballot is not defined as an "essential" activity under Governor Wolf's stay at home orders.  Moreover, even in yellow phase counties, mandatory social distancing means that collecting signatures by hand remains a prohibited activity.  Consequently, the public health emergency caused by COVID-19 and the various executive orders issued by Governor Wolf make it both unlawful and practically impossible to gather signatures for nomination papers throughout Pennsylvania.  As the Governor's website cautions, law enforcement is authorized to enforce the Governor's orders, and "citations are possible for violators…."[7]  Given the severity of the COVID-19 pandemic and its impact on Pennsylvania, it remains uncertain whether petitioning will become lawful during any part of the statutorily-mandated signature collection period prior to the August 3, 2020 deadline for Political Bodies to file nomination papers.  And even if the legal prohibitions are lifted – including mandatory social distancing requirements – petitioning will remain a practical impossibility due to the unacceptable risk to the public health posed by personal contact with large numbers of people during a pandemic.

On March 30, 2020 and March 31, 2020, respectively, Plaintiffs GPPA and LPPA sent Governor Wolf and Secretary Boockvar urgent written requests for relief from Pennsylvania's

---

[5] *Id.*

[6] *Id.*

[7] https://www.governor.pa.gov/newsroom/gov-wolf-announces-13-counties-will-move-to-yellow-phase-ofreopening-on-may-15/.

3

petitioning requirements as applied to them in the 2020 election cycle.  (Verified Complaint Ex.

B, Ex. C.)  Plaintiff CPPA did the same on April 20, 2020.  (Verified Complaint Ex. D.)  Receiving

no response, on April 29, 2020 Plaintiff LPPA sent Governor Wolf and Secretary Boockvar another

letter reiterating its urgent request for relief, and Plaintiff GPPA did so on April 30, 2020.  (Verified

Complaint Ex. E, Ex. F.)  On May 4, 2020 – five weeks after initially making their urgent requests

– Plaintiffs LPPA and GPPA received a letter from Timothy Gates, Chief Counsel of the Governor's

Office of General Counsel, advising that his office is "currently reviewing this matter," and that

"we will be in touch soon."  (Verified Complaint Ex. G.)  To date, Plaintiffs have received no

further response from Defendants.

Meanwhile, the clock is ticking and the August 3, 2020 deadline for Plaintiffs to file

nomination papers rapidly approaches.  Petitioning remains unlawful in Pennsylvania, and there

is no reason to believe it will become legal – much less safe – anytime soon.  Plaintiffs therefore

urgently need the relief requested herein, to protect their speech, petitioning, voting, associational

and equal protection rights as guaranteed by the First and Fourteenth Amendments.  In the absence

of such relief, Plaintiffs will suffer irreparable harm, because they are prohibited from petitioning

and their respective candidates will be excluded from Pennsylvania's 2020 general election ballot.

* * *

This case is precipitated by the COVID-19 pandemic but it does not arise in an historical

vacuum.  For more than a decade following the 2004 election cycle, Plaintiffs labored under an

unconstitutional statutory scheme in Pennsylvania, until this Court declared it unconstitutional in

2015.  *See Constitution Party of Pa. v. Cortes*, 116 F.Supp.3d 486 (E.D. Pa. 2015), *aff'd.*, 824 F.3d

386 (3rd Cir. 2016) (holding Pa. Stat. Ann. § 2911(b) unconstitutional as applied in conjunction

with Pa. Stat. Ann. § 2937).  That statutory scheme prevented Plaintiffs from participating in

Pennsylvania's electoral process and decimated the ability of CPPA, GPPA and LPPA to function

4

as political parties.  *See generally Constitution Party of Pa. v. Aichele*, 757 F. 3d 347 (3rd Cir. 2014).  Before they were subject to that unconstitutional statutory scheme, however, CPPA, GPPA and LPPA routinely complied with Pennsylvania's ballot access requirements, and in fact, all three parties were qualified Minor Political Parties in 2002, 2004 and 2006.  *See id.* at 353.  They lost that status not because they lacked the requisite voter support but because Pennsylvania's unconstitutional statutory scheme prevented them from participating in the electoral process.  *See generally Constitution Party of Pa.*, 757 F. 3d 347.

This Court's February 1, 2018 order in *Constitution Party of Pa.* (attached as Exhibit A to the Verified Complaint) provided Plaintiffs with a constitutional procedure to qualify for the ballot, and that order remains in effect.  Now, however, the COVID-19 pandemic and Governor Wolf's ensuing executive orders make it unlawful and practically impossible for Plaintiffs to comply with that procedure.  But for these emergency circumstances, Plaintiffs certainly could have and would have complied with the terms of this Court's February 1, 2018 order and qualified for placement on Pennsylvania's November 3, 2020 general election ballot. Plaintiffs therefore respectfully request that the Court grant them the relief requested herein for the 2020 election cycle only.

## LEGAL STANDARDS

A district court should grant an *ex parte* temporary restraining order where "specific facts in an affidavit or verified complaint clearly show that immediate and irreparable injury, loss or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. App. P. 65(b)(1)(A). The standard for granting a temporary restraining order is the same as that for granting a preliminary injunction. *See Bieros v. Nicola*, 857 F. Supp. 445, 446 (E.D. Pa. 1994).  To obtain a preliminary injunction, Plaintiffs must demonstrate that: 1) they have a likelihood of success on the merits; 2) they will suffer irreparable harm if the injunction is denied; 3) granting the injunction will not result in even greater harm to the Commonwealth; and 4) the public interest

favors such relief. *See NAACP of Pennsylvania v. Cortes*, 591 F. Supp. 2d 757, 763 (E.D. Pa. 2008) (citing *Child Evangelism Fellowship of New Jersey, Inc. v. Stafford Township Sch. Dist.*, 386 F.3d 514, 524 (3rd Cir. 2004)).

## ARGUMENT

**I.     Plaintiffs Are Entitled to Preliminary Relief.**

### A.  Plaintiffs Have a Strong Likelihood of Success on the Merits.

The extraordinary circumstances from which this case arises make it any easy one to decide.  Under Pennsylvania law as it now exists, Plaintiffs have <u>no lawful procedure by which they may qualify their candidates for Pennsylvania's November 3, 2020 general election ballot</u>, and Defendants have failed to take remedial action to correct this constitutional infirmity. Plaintiffs are entitled to the relief requested on that basis alone.  Plaintiffs are also entitled to the relief requested because Pennsylvania's petitioning requirements, as applied here, cannot withstand constitutional scrutiny under the analytic framework the Supreme Court established in *Anderson v. Celebrezze*, 460 U.S. 780 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992).

> **1.     Plaintiffs Are Entitled to Relief Because Pennsylvania Has Failed to Provide Them with Any Procedure for Qualifying for the November 3, 2020 General Election Ballot.**

When states fail to provide candidates and parties with a procedure by which they may qualify for the ballot, the Supreme Court and lower federal courts have not hesitated to remedy the defect by placing candidates and parties on the ballot by court order, provided that the candidates and parties can present evidence that they have a "modicum of support" among the electorate.  In 1976, for instance, several states provided no procedure for independent candidates to qualify for the ballot. In each of these states, independent presidential candidate Eugene McCarthy sought relief in federal court, and without exception the courts ordered that he be placed on the ballot. *See McCarthy v. Briscoe*, 429 U.S. 1317, 97 S. Ct. 10 (1976) (Powell, J. in Chambers) (placing

McCarthy on Texas ballot); *McCarthy v. Askew*, 540 F.2d 1254, 1255 (5th Cir. 1976) (*per curiam*) (affirming order placing McCarthy on Florida's ballot); *McCarthy v. Noel*, 420 F. Supp. 799 (D. R.I. 1976) (placing McCarthy on Rhode Island ballot); *McCarthy v. Tribbitt*, 421 F. Supp. 1193 (D. Del. 1976) (placing McCarthy on Delaware ballot); *McCarthy v. Austin*, 423 F. Supp. 990 (W.D. Mich. 1976) (placing McCarthy on Michigan ballot). As Justice Powell observed in *McCarthy v. Briscoe*, the Supreme Court had followed the same procedure in 1968, when it ordered that several candidates who successfully challenged the constitutionality of Ohio's ballot access laws be placed on its ballot. *See McCarthy v. Briscoe*, *supra*, (citing *Williams v. Rhodes*, 89 S. Ct. 1, 21 L.Ed.2d 69 (Stewart, J., in Chambers, 1968)).

In 1980, Michigan had failed to enact a procedure for independent candidates to access the ballot following the decision in *McCarthy v. Austin*, *supra*, and two independent candidates running for president and vice-president filed suit. *See Hall v. Austin*, 495 F. Supp. 782 (E.D. Mich. 1980). Once again, a federal court ordered that the independent candidates be placed on Michigan's ballot. *See id.* at 791-92.  The issue arose again in 1984, because Michigan still had not enacted a procedure for independent candidates to qualify for the ballot.  An independent candidate for the State Board of Education filed suit, the district court again declared Michigan's ballot access scheme unconstitutional, and the Secretary of State was ordered to place the candidate on the ballot.  *See Goldman-Frankie v. Austin*, 727 F.2d 603, 607-08 (6th Cir. 1984).

In *Williams*, the Supreme Court explained the rationale for federal courts to grant such relief: the Constitution does not permit states to restrict access to the ballot in a manner that "favors two particular parties – the Republicans and the Democrats – and in effect tends to give them a complete monopoly." *Williams v. Rhodes*, 393 U.S. 23, 32 (1968)). Here, the Commonwealth of Pennsylvania – albeit with the unwanted intrusion of a global pandemic – has accomplished that same result.  The last day for Political Party candidates – *i.e.*, Republicans and Democrats – to

circulate and file nomination petitions to qualify for the primary election ballot was February 18, 2020.  Consequently, such candidates were not impacted by Governor Wolf's various executive orders imposing emergency measures to contain the COVID-19 outbreak, and the Republican and Democratic nominees selected by means of Pennsylvania's taxpayer-funded primary election are thereby automatically qualified to appear on the 2020 general election ballot.  Yet it is unlawful – a violation of those same executive orders – for Plaintiffs to engage in petitioning, which is the only procedure that Pennsylvania provides for them to qualify for the general election ballot.  The grounds for this Court's intervention could not be clearer.

Pennsylvania did not cause the outbreak of the COVID-19 virus, of course, but that is immaterial.  Pennsylvania is constitutionally required to provide its citizens with a lawful procedure to qualify for its general election ballot, and it has failed to do so. Certainly, Pennsylvania could have adopted measures to remedy this constitutional defect.  For instance, on March 27, 2020, in response to the COVID-19 emergency, Governor Wolf signed legislation that rescheduled Pennsylvania's primary election from April 28 to June 2.[8]  Yet, while Governor Wolf has issued several executive orders that impose sweeping changes to Pennsylvania law – and which incidentally make it impossible for Plaintiffs to qualify for Pennsylvania's November 3, 2020 general election ballot – Defendants did not respond to Plaintiffs' urgent requests for relief for five weeks, and their only response to date is that they are "reviewing this matter" and "will be in touch soon."  (Verified Complaint Ex. G.)  Under these circumstances, Plaintiffs are entitled to an order granting them ballot access for the November 3, 2020 general election.

As Justice Powell explained, where a state fails to provide a procedure for candidates to demonstrate the support necessary to qualify for the ballot, "a court may properly look to available

---

[8] https://www.votespa.com/About-Elections/Pages/Upcoming-Elections.aspx.

evidence or to matters subject to judicial notice to determine whether there is reason to assume the requisite community support." *McCarthy*, 429 U.S. at 1323.  Thus in *McCarthy*, the Court placed the plaintiff-candidate on the ballot in reliance on the fact that he was "a nationally known figure" who had served two terms as a Senator and five terms as a United States Representative.  *Id.*  The Sixth Circuit expressly relied on *McCarthy* to grant the same relief in *Goldman-Frankie*.  *See Goldman-Frankie*, 727 F.2d at 607.  In that case, the Court found that the plaintiff's "demonstration of the requisite community support was not compelling" – she had twice previously run for statewide office and received a modest number of votes – but found it "sufficient to warrant the relief granted by the district court."  *Id.* at 607-08 &n.4.

Here, Plaintiffs CPPA, GPPA and LPPA have much stronger evidence of the requisite community support.  Indeed, all three parties consistently demonstrated that support and enjoyed the status of ballot-qualified Minor Political Parties until Pennsylvania began enforcing an unconstitutional statutory scheme against them.  *See Constitution Party of Pa.*, 757 F. 3d at 353 ("In the 2002, 2004, and 2006 elections, [CPPA, GPPA and LPPA] were each qualified minor parties ... because each party had a candidate on the preceding general election ballot who polled the requisite number of votes").  They lost that status not due to a sudden loss in their community support, but because Pennsylvania's unconstitutional statutory scheme made it impossible for them to qualify for the ballot for nearly a decade following the 2006 general election.  *See Constitution Party of Pa.*, 116 F.Supp.3d 486 (E.D. Pa. 2015), *aff'd.*, 824 F.3d 386 (3rd Cir. 2016) (holding § 2911(b) unconstitutional as applied in conjunction with § 2937).

The ballot access requirements established by this Court's February 1, 2018 order in *Constitution Party of Pa.* remain in effect, and they are substantially less restrictive than the requirements that applied when CPPA, GPPA and LPPA were ballot-qualified Minor Political Parties in 2002, 2004 and 2006.  Further, in the 2016 presidential election immediately preceding

this one, CPPA, GPPA and LPPA were all ballot-qualified, and their candidates received 21,572, 49,941 and 146,715 votes, respectively.  *See* Dept. of State, *2016 General Election Official Returns*, available at https://www.electionreturns.pa.gov/General/SummaryResults?ElectionID=54&ElectionType=G &IsActive=0 (accessed May 18, 2020). In that same election, LPPA's candidates for United States Senator, Auditor General and State Treasurer received 235,142 votes, 131,853 votes and 132,654 votes, respectively, while GPPA's candidates for Auditor General and State Treasurer received 158,942 votes and 170,275 votes respectively. *See id.*  In addition, GPPA and LPPA were ballot-qualified in 2018, and their candidates for United States Senator received 31,208 votes and 50,907 votes, respectively, while their candidates for Governor received 27,792 votes and 49,229 votes, respectively. *See* Dept. of State, *2018 General Election Official Returns*, available at https://www.electionreturns.pa.gov/General/SummaryResults?ElectionID=63&ElectionType=G &IsActive=0 (accessed May 18, 2020).[9]

The foregoing facts demonstrate that CPPA, GPPA and LPPA routinely qualify for Pennsylvania's general election ballot when they are not subject to unconstitutional restrictions, and that hundreds of thousands of Pennsylvanians have voted for their candidates in recent elections.  This evidence demonstrates that these parties enjoy a substantial modicum of support among Pennsylvania's electorate, and it is far more compelling than the evidence that federal courts have found sufficient to justify granting candidates and parties ballot access in analogous cases. Under the standard established by the Supreme Court and applied in the above-cited cases,

---

[9] Additionally, voter registration data obtained from the Pennsylvania Department of state demonstrates that GPPA has 9,547 registered members and LPPA has 40,324 registered members as of January 2020. *See* Richard Winger, *Early 2020 Voter Registration Totals*, BALLOT ACCESS NEWS, available at http://ballot-access.org/2020/03/27/march-2020-ballot-access-news-print-edition/ (accessed May 18, 2020) Current figures are unavailable for CPPA but CPPA had 1,497 registered members in February 2016. *See* Richard Winger, *February 2016 Registration Totals*, BALLOT ACCESS NEWS, available at http://ballotaccess.org/2016/03/27/march-2016-ballot-access-news-print-edition/ (accessed May 18, 2020).

therefore, Plaintiffs are entitled to that same relief here, for the 2020 general election only.[10]

**2.**   **Pennsylvania's Statutory Scheme Cannot Withstand Constitutional Scrutiny as Currently Applied.**

Plaintiffs are also entitled to the relief requested because Pennsylvania's statutory scheme, as currently applied, cannot withstand constitutional scrutiny under the Supreme Court's *Anderson-Burdick* analytic framework. Under that analysis, a reviewing court must:

> first consider the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendments that the plaintiff seeks to vindicate. It then must identify and evaluate the precise interests put forward by the State as justifications for the burden imposed by its rule. In passing judgment, the Court must not only determine the legitimacy and strength of each of those interests, it also must consider the extent to which those interests make it necessary to burden the plaintiff's rights. Only after weighing all these factors is the reviewing court in a position to decide whether the challenged provision is unconstitutional.

*Anderson*, 460 U.S. at 789. This framework establishes a "flexible standard," according to which "the rigorousness of our inquiry into the propriety of a state election law depends upon the extent to which a challenged restriction burdens First and Fourteenth Amendment rights." *Burdick*, 504 U.S. at 434. Under this standard, "reasonable, nondiscriminatory restrictions" are subject to less exacting review, whereas laws that impose "severe" burdens are subject to strict scrutiny. *See id.* (citations omitted). But in every case, "However slight [the] burden may appear ... it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion County Election Bd.*, 553 U.S. 181, 190 (2008) (citation and quotation marks omitted).

The burden that Pennsylvania law imposes on Plaintiffs' First and Fourteenth Amendment rights as applied here is undeniably severe.  For more than six weeks (and even longer in many

---

[10] *See also Libertarian Party of Ohio v Husted*, No. 2:13-cv-953, 2014 WL 11515569 (S.D. Oh. 2014) (unreported order entered January 7, 2014 placing Libertarian Party on ballot); *Green Party of Tn. v Hargett*, 882 F.Supp.2d 959 (M.D. Tenn. 2012) (placing Green Party and Constitution Party on ballot); *Socialist Labor Party v Rhodes*, 318 F. Supp. 1262 (S.D. Oh. 1970) (placing Socialist Labor Party on ballot).

counties), it has been unlawful for Plaintiffs to attempt to comply with the only procedure that Pennsylvania provides for them to qualify for the November 3, 2020 general election ballot. *See* 25. Pa. Ann. Stat. § 2911.[11]   Further, the August 3, 2020 deadline for Plaintiffs to submit nomination papers is rapidly approaching, and there is no telling if and when the legal restrictions that prohibit Plaintiffs from petitioning will be lifted.  And even if the legal restrictions are lifted, it will remain impossible, as a practical matter, for Plaintiffs to obtain signatures on nomination papers because doing so would present an unacceptable health risk not only to petition circulators and potential signers, but also to the general public.

In a case arising from factually indistinguishable circumstances, Chief Judge Pallmeyer of the Northern District of Illinois held that Illinois' petitioning requirements were unconstitutional as applied in the context of the COVID-19 pandemic.  *See Libertarian Party of Pa., et al. v. Pritzker, et al.*, No. 1:20-cv-02112, 2020 WL 1951687, Dckt. No. 26 (N.D. Il. April 23, 2020).  As Judge Pallmeyer explained:

> The combined effect of the restrictions on public gatherings imposed by Illinois' stay-at-home order and the usual in-person signature requirements in the Illinois Election Code is a nearly insurmountable hurdle for new party and independent candidates attempting to have their names placed on the general election ballot. The problem is exacerbated … by the fact that the "window" for gathering such signatures opened at nearly the same time that Governor Pritzker first imposed restrictions. … Notably, from the outset of these proceedings, even Defendants have acknowledged that the ballot access restrictions must be relaxed, in some shape or form, to account for the havoc that COVID-19 has wreaked.

*Id.* at PageID 395-96 (citations omitted).  Accordingly, Judge Pallmeyer entered an order granting the plaintiffs' motion for a preliminary injunction.  *See Libertarian Party of Pa.*, No. 1:20-cv-02112, Dckt. No. 27 (N.D. Il. April 23, 2020), *modified by* Dckt. No 36 (N.D. Ill. May 15, 2020). The order provides substantial relief from Illinois' petitioning requirements. Specifically, it: (1)

---

[11] This Court's order enjoining enforcement of § 2911(b) establishes new signature requirements but does not modify the petitioning requirement the provision imposes, which Plaintiffs challenge here. *See* Order, *Constitution Party of Pa.*, No. 12-2726, Doc. No. 115 (attached to Plaintiffs' Verified Complaint as Exhibit A).

grants the plaintiff political parties ballot access in Illinois' 2020 general election ballot for any office for which the parties were ballot-qualified in 2018 or 2016; (2) reduces the statutorily-imposed signature requirements for all other minor party and independent candidates by 90 percent; (3) enjoins enforcement of Illinois' requirement that nomination petitions be signed with "wet" handwritten signatures and instead authorizes nomination petitions to be signed electronically; (4) enjoins enforcement of Illinois' requirement that original nomination petitions be submitted, and instead authorizes the electronic submission of photocopies or digital reproductions; (5) enjoins enforcement of Illinois' notarization requirement; and (6) extends the filing deadline from June 22 to July 20, among other relief.  *See id.*

In another recently-decided case, a federal district court held Michigan's primary election ballot access requirements unconstitutional as applied during the COVID-19 pandemic.  *See Esshaki v. Whitmer*, No. 2:20-CV-10831-TGB, 2020 WL 1979126, at *2, *12 (E.D. Mich. Apr. 20, 2020) (recognizing signature-gathering challenges arising from the COVID-19 pandemic and the State of Michigan's stay-at-home directive, ordering that certain candidates "[s]hall be qualified for inclusion on the August 4, 2020 primary election ballot if the candidate submits fifty percent of the number of valid signatures required by" a Michigan election law, and ordering Michigan's Director of Elections to "adopt and promulgate" appropriate "regulations providing for an additional optional procedure that allows the collection and submission of ballot petition signatures in digital form by electronic means such as email").   On appeal, the Sixth Circuit affirmed the "the district court's order enjoin[ing] the State from enforcing the ballot-access provisions at issue unless the State provides some reasonable accommodations to aggrieved candidates." *Esshaki v. Whitmer*, 2020 WL 2185553. __ Fed. Appx. __ (6th Cir., May 5, 2020).  It was only in terms of remedy that the Sixth Circuit remanded the matter to the District Court: "we are instructing the State to select its own adjustments so as to reduce the burden on ballot access, narrow the

restrictions to align with its interest, and thereby render the application of the ballot access provisions constitutional under the circumstances." *Id*. at *2.  The Sixth Circuit also advised the State that the simplest way to proceed was for it to implement what the District Court had ordered, *id*., which is exactly what happened in the end.  On May 8, 2020, Michigan agreed to reduce its signature collection requirement by 50 percent, which is what the District Court had previously required.  *See* Richard Winger, *Michigan Secretary of State Now Agrees to 50% Cut in Number of Primary Petition Signatures*, Ballot Access News, May 8, 2020.[12]

And in Utah, Chief Judge Robert Shelby of the federal district court granted relief to a candidate seeking to run in the Republican Party primary election for governor.  *See Garbett v. Herbert*, 2:20-cv-245-RJS, 2020 WL 2064101 (April 29, 2020).  In that case, the plaintiff had collected approximately 21,000 signatures to comply with a 28,000-signature requirement by the April 13, 2020 filing deadline, and alleged that she would have complied with the requirement but for the burden imposed by the COVID-19 pandemic and the governor's ensuing orders imposing "stay at home" and "social distancing" requirements.  In granting relief, the Court reasoned that the plaintiff had been prevented from petitioning for 32 percent of that statutory period, and therefore reduced Utah's signature requirement by the same percentage.  *See id.* at *18.

The Massachusetts Supreme Judicial Court granted similar relief to candidates seeking access to Massachusetts' primary election ballot. *See Goldstein v. Galvin*; SJC-12931 (April 17, 2020) (unreported).  In that case, the Commonwealth's high court reduced the applicable signature requirements by 50 percent, extended the applicable filing deadlines, and authorized the plaintiffs to collect signatures using electronic procedures. *See id.*

In each of the foregoing cases, the courts readily concluded that the challenged laws

---

[12] https://ballot-access.org/2020/05/08/michigan-secretary-of-state-now-agrees-to-50-cut-in-number-of-primary-petitions/.

imposed severe burdens as applied in the context of the COVID-19 pandemic, and that the governors' orders were not narrowly tailored to serve the state's interests, because they failed to provide the plaintiffs with a lawful procedure to qualify for the ballot.  The challenged provisions thus failed to withstand constitutional scrutiny under the *Anderson-Burdick* analysis.  The same is true here.

To be sure, Pennsylvania has a strong and even compelling interest in protecting the public health during a pandemic.  But no court has ever upheld a ballot access restriction that categorically excludes all candidates except Republicans and Democrats, and that is what Pennsylvania law does as applied here.  The petitioning period for Republicans and Democrats to qualify for the primary election ballot concluded before the outbreak of the COVID-19 pandemic, and before Governor Wolf's executive orders took effect.  Those orders may impose reasonable restrictions to protect the public health, but they entirely fail to account for the fact that Plaintiffs are required to engage in petitioning to qualify for Pennsylvania's November 3, 2020 general election ballot.  Indeed, by their express terms, the orders prohibit Plaintiffs from engaging in the in-person contact necessary to collect signatures on nomination papers.  And despite Plaintiffs' repeated urgent requests for relief, Defendants have yet to establish alternative procedures or requirements that would provide Plaintiffs with a lawful means of qualifying for the ballot.  Because petition circulation is prohibited under Pennsylvania law and practically impossible during the COVID-19 pandemic, and because Pennsylvania has failed to establish an alternative procedure by which Plaintiffs may qualify for its general election ballot, the petitioning requirements imposed by §§ 2911 and 2913(b) – (c) are unconstitutional as applied to Plaintiffs in the 2020 general election cycle.

### B.  Plaintiffs Will Suffer Irreparable Harm in the Absence of Preliminary Relief.

It is well-settled that the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Stilp v. Contino*, 613 F.3d 405 (3rd Cir. 2010) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As the Third Circuit has explained, where the Court concludes that Pennsylvania's ballot access requirements are likely unconstitutional as applied, "it clearly follows that denying [Plaintiffs] preliminary injunctive relief will cause them to be irreparably injured." *Council of Alternative Political Parties v. Hooks*, 121 F.3d 876, 883 (3rd Cir. 1997). Specifically:

> Plaintiffs' voting and associational rights are burdened by their inability to nominate, support, and vote for candidates who represent their beliefs. If the plaintiffs lack an adequate opportunity to gain placement on the ballot in this year's election, this infringement on their rights cannot be alleviated after the election.

*Id.* Unless the Court grants Plaintiffs preliminary relief, they will suffer the same irreparable injury.

### C.    The Balance of Harms Weighs Strongly in Plaintiffs' Favor.

The harm that Plaintiffs will suffer in the absence of the requested relief is plain: their candidates will be excluded from Pennsylvania's November 3, 2020 general election ballot; voters will be deprived of the opportunity to hear their political views and to associate with and support them; CPPA, GPPA and LPPA will be prevented from disseminating and building support for their platforms among the general electorate; and CPPA, GPPA and LPPA will be denied the opportunity to win sufficient electoral support to retain ballot access in the next election cycle. The Supreme Court has expressly relied on such harms to justify granting the relief that Plaintiffs request here. *See*, *e.g.*, *Norman v. Reed*, 502 U.S. 279, 288-89 (1992); *Anderson*, 460 U.S. at 793-94; *Williams*, 393 U.S. at 30-31. The Court's admonition in *Williams* applies equally here:

> The right to form a party for the advancement of political goals means little if a party can be kept off the election ballot and thus denied an equal opportunity to win votes. So also, the right to vote is heavily burdened if that vote may be cast only for one of two parties at a time when other parties are clamoring for a place on the ballot.

*Williams*, 393 U.S. at 31. This Court's intervention is amply justified to prevent such harm to Plaintiffs' "most precious freedoms." *Id.* at 30.

By contrast, Defendants will not suffer any harm if the Court grants Plaintiffs the requested relief. CPPA, GPPA and LPPA have qualified for Pennsylvania's general election ballot with regularity in past election cycles, and there is no evidence that Pennsylvania sustained any harm to its electoral processes as a result of their participation. On the contrary, as the Supreme Court has repeatedly observed, "[h]istorically political figures outside the two major parties have been fertile sources of new ideas and new programs; many of their challenges to the status quo have in time made their way into the political mainstream." *Anderson*, 460 U.S. at 794; *see Ill. Bd. of Elections v. Socialist Workers Party*, 440 U.S. 173, 185-86 (1979); *Sweezy v. New Hampshire,* 354 U.S. 234, 250-251 (1957). Thus, the continued participation of CPPA, GPPA and LPPA in Pennsylvania's electoral process will benefit, not harm, Defendants and the voters of Pennsylvania generally.

Moreover, the relief that Plaintiffs request here is precisely the same relief that other states have granted of their own volition. On March 30, 2020, for example, Vermont enacted legislation providing that "a person shall not be required to collect voter signatures in order to have the person's name placed on any ballot in the year 2020." *See* An Act Relating to Government Operations in Response to the COVID-19 Outbreak, HB 681 (2020), available at https://legislature.vermont.gov/Documents/2020/Docs/BILLS/H-0681/H-0681%20As%20Passed%20by%20Both%20House%20and%20Senate%20Official.pdf (accessed April 2, 2020). The Secretary of State of Connecticut has likewise recommended to that state's Governor and Legislature that its petitioning requirements be eliminated, and that all currently-qualified third parties in the state be granted "automatic ballot access for all races in November…" *See* Richard Winger, *Connecticut Secretary of State Asks Governor to Suspend Petitioning for*

*General Election for Parties That Already Have Statewide Status for at Least One Office*, Ballot

Access News (March 31, 2020), available at http://ballot-access.org/2020/03/31/connecticut-

secretary-of-state-asks-governor-to-suspend-petitioning-for-general-election-for-parties-that-

already-have-statewide-status-for-at-least-one-office/ (accessed May 18, 2020).

No harm will come to Defendants or the Commonwealth of Pennsylvania if the Court

grants similar relief here. On the contrary, Defendants will be relieved of the considerable burden

of validating petition signatures during the crunch of the election cycle for parties that have

repeatedly demonstrated a substantial modicum of support among the Pennsylvania electorate. The

balance of harms therefore weighs strongly in Plaintiffs' favor.

### D.   The Requested Relief Is in the Public Interest.

Finally, granting Plaintiffs injunctive relief is in the public interest because, as the Supreme

Court has observed, "all political ideas cannot and should not be channeled into the programs of

our two major parties." *Williams v. Rhodes*, 393 U.S. 23, 39 (1968) (citation omitted). Yet that is

precisely what will happen in Pennsylvania, due to the COVID-19 pandemic and the Governor's

ensuing executive orders.  Further, "in the absence of legitimate, countervailing concerns," the

Third Circuit has concluded, "the public interest clearly favors the protection of constitutional

rights, including the voting and associational rights of alternative political parties, their candidates

and their potential supporters." *Council of Alternative Political Parties*, 121 F.3d at 883-84.

Here, there are no legitimate countervailing concerns. Plaintiffs' request for injunctive

relief arises because Defendants have failed to provide them with a lawful and constitutional

procedure to qualify for Pennsylvania's November 3, 2020 general election ballot. But "the

enforcement of an unconstitutional law vindicates no public interest." *KA ex rel Ayers*, 710 F.3d at

114 (citing *ACLU v. Ashcroft*, 322 F.3d 240, 251 n. 11 (3rd Cir. 2003) ("Neither the Government

nor the public generally can claim an interest in the enforcement of an unconstitutional law")). Consequently, the public interest weighs in favor of granting Plaintiffs injunctive relief.

> **E.      No Bond Is Needed as Security.**

Federal Rule of Civil Procedure 65(c) states that security is required.  Courts have often observed that security is not mandatory under Rule 65(c) and can be dispensed with at the discretion of the court. *See Zambelli Fireworks Mfg., Inc. v. Wood,* 593 F.3d 412, 426 (3rd Cir. 2010); *Pashby v. Delia*, 709 F.3d 307, 331-32 (4th Cir. 2013); *Moltan Co. v. Eagle-Picher Industries, Inc.,* 55 F.3d 1171, 1176 (6th Cir. 1995).  This is especially true in the context of voting rights and ballot access.  *See*, *e.g.*, *Moore v. Brunner*, 2008 WL 232530, at *5 (S.D. Ohio 2008). No security is needed in this case, as preliminary relief threatens no financial harm to Defendant.

## <u>CONCLUSION</u>

For the foregoing reasons, Plaintiffs respectfully move the Court to grant their Motion for Preliminary Injunction.

<div style="margin-left:50%">

Respectfully submitted,

<u>/s/Drew Gray Miller</u>
Drew Gray Miller, Esq.
PA ID: 207830
Anderson & Labovitz, LLC
428 Forbes Ave., Suite 1901
Pittsburgh, PA 15219
Mobile: 412-760-3286
Fax: 412-291-1001
dmiller@PaLawFirm.com
*Counsel of Record*

</div>

Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, DC 20009
202-248-9294
oliverhall@competitivedemocracy.org
*Pro Hac Vice Pending*

<div style="margin-left:50%">

Mark R. Brown
303 E. Broad Street
Columbus, OH 43215
614-236-6590
mbrown@law.capital.edu
*Pro Hac Vice Pending*

Attorneys for Plaintiffs

</div>

## UNITED STATES DISTRICT COURT FOR THE
## EASTERN DISTRICT OF PENNSYLVANIA

---

LIBERTARIAN PARTY OF PENNSYLVANIA,     )
*et al.*,                               )
                                        )
                      *Plaintiffs*,     )        Case No. 2:20-cv-2299
                                        )
            v.                          )
                                        )
TOM WOLF, in his official capacity as Governor )
of Pennsylvania, *et al.*               )
                                        )
                      *Defendants*.     )

---

### [PROPOSED] ORDER

AND NOW, this _____ day of May, 2020, upon consideration of Plaintiffs' Motion for Temporary Restraining Order and Preliminary Injunction, and any Opposition filed thereto, IT IS HEREBY ORDERED that the motion is GRANTED.

IT IS FURTHER ORDERED that Defendants Kathy Boockvar, Jonathan M. Marks and their agents are hereby ENJOINED from enforcing the petitioning requirements and filing deadlines imposed by 25 Pa. Stat. Ann. §§ 2911(b) and 2913(b) – (c) as applied to the nomination papers submitted by Plaintiffs Constitution Party of Pennsylvania, Green Party of Pennsylvania and Libertarian Party of Pennsylvania for inclusion on Pennsylvania's November 3, 2020 general election ballot.

IT IS FURTHER ORDERED that Defendant Kathy Boockvar shall place the nominees of Plaintiffs Constitution Party of Pennsylvania, Green Party of Pennsylvania and Libertarian Party of Pennsylvania on Pennsylvania's November 3, 2020 general election ballot, because they have demonstrated the requisite community support by virtue of their regular presence on Pennsylvania's general election ballot in recent election cycles and other evidence in the record.

20

BY THE COURT:

_____

**CERTIFICATE OF SERVICE**

I hereby certify that on this 19th day of May, 2020, I filed the foregoing Motion for

Temporary Restraining Order and Preliminary Injunction, on behalf of all Plaintiffs, by means of

the Court's CM/ECF system, and copies of this motion and the accompanying Verified Complaint

were served upon the following:

Timothy Gates
Chief Counsel
Commonwealth of Pennsylvania Governor's Office of General Counsel
tgates@pa.gov

/s/Drew Gray Miller
Drew Gray Miller