IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| LIBERTARIAN PARTY OF PENNSYLVANIA, THE CONSTITUTION PARTY OF PENNSYLVANIA, AND GREEN PARTY OF PENNSYLVANIA, STEVE SCHEETZ, KEVIN GAUGHEN, ALAN SMITH, TIMOTHY RUNKLE, BOB GOODRICH, and JUSTIN MAGILL, : : : : : : : : | |
| Plaintiffs, : | |
| vs. : | Case No. 5:20-cv-2299 |
| TOM WOLF, in his official capacity as Governor of the Commonwealth of Pennsylvania, : : : | Judge: The Honorable Edward G. Smith |
| and : | |
| KATHY BOOCKVAR, in her official capacity as Secretary of the Commonwealth of Pennsylvania, : : : : | |
| and : | |
| JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, : : : : | |
| Defendants. : | |

**SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO INTERVENE**

Pursuant to Local Rule 7.1, the Pennsylvania Democratic Party (""Pennsylvania Democratic Party"), by and through its counsel, Clifford B. Levine, Alex M. Lacey, and the law firm of Dentons Cohen & Grigsby P.C., files this Supplemental Brief in Support of its Motion to Intervene.

### I.   INTRODUCTION

The "political bodies" that are the Plaintiffs here ask this Court to make fundamental changes to the procedure of the 2020 General Election in Pennsylvania. The Pennsylvania Democratic Party has a vital interest, on behalf of itself, its voters, and its candidates, that

warrant intervention and participation in this matter. Courts, in Pennsylvania and across the country, have recognized the right of political parties to intervene where significant changes to general election procedures are sought. For these reasons, the Pennsylvania Democratic Party's Motion to Intervene here should be granted.[1]

## II. FACTUAL BACKGROUND

**A.  The Pennsylvania Democratic Party, Its Members, Its Candidates, And Its Interests Here**

As of May 26, 2020, over 4 million Pennsylvanians are registered members of the Pennsylvania Democratic Party, making it the largest political party by registration in Pennsylvania.[2] The Pennsylvania Democratic Party is a "major political party" as defined in the Pennsylvania Election Code (the "Code"). 25 P.S. §§ 2601 *et seq.*.[3] On June 2, 2020, Democratic candidates across Pennsylvania will compete in the 2020 Primary Election. Traditionally, the Pennsylvania Democratic Party has fielded a candidate for all statewide elected positions and virtually all congressional and General Assembly districts. The Pennsylvania Democratic Party's main organizational purpose is to promote the election of Democratic candidates and the interests of registered Democratic voters. Upon the determination of the 2020 Democratic Primary winners, the Pennsylvania Democratic Party will devote significant resources to the election of the Democratic nominees.

---

[1] On May 26, 2020, the Pennsylvania Democratic Party received notice of a pending teleconference in this matter scheduled for May 27, 2020. The Pennsylvania Democratic Party immediately sought intervention and submitted a short Brief in Support of Its Motion to Intervene on May 27, 2020, which, shortly before the teleconference, Plaintiffs challenged with a Brief in Opposition to Intervention. The Pennsylvania Democratic Party submits this supplemental Brief to more fully explain the basis for its intervention. If permitted to intervene, The Pennsylvania Democratic Party would submit a responsive pleading at the same time as the named defendants.

[2] Voting & Election Statistics, PA. DEPT. OF STATE WEBSITE, https://www.dos.pa.gov/VotingElections/OtherServicesEvents/VotingElectionStatistics/Pages/VotingElectionStatistics.aspx (last visited June 1, 2020).

[3] A more detailed analysis of the Code is below. *See* Section II. B, *infra*.

B.     **Political Parties, Political Bodies, And Nominations Under The Pennsylvania Election Code**

The Code distinguishes between "political parties" and "political bodies." 25 P.S. § 2831. When at least one candidate of a political organization receives ***both***: 1) two percent in each of at least ten counties of the largest entire vote cast in each of said counties for any elected candidate; and 2) two percent of statewide votes of the largest entire vote cast for any elected candidate, that political organization becomes a "political party." *Id.* The Code provides that any other political organization, which cannot meet those two requirements, are "political bodies." *Id.* Currently, the Pennsylvania Democratic Party and the Pennsylvania Republic Party are the only political organizations that qualify as "political parties" under the Code. All other political organizations, including the Plaintiffs here, are, under the clear provisions of the Code, "political bodies."[4]

Because the Pennsylvania Democratic Party is a "political party," registered Democrats may circulate "nomination petitions" for various federal, state, and local offices to be placed on the Democratic primary ballot. To appear on the primary ballot, a candidate must collect a certain number of signatures depending on the office. 25 P.S. §§ 2867, 2872.1. Any Democratic primary candidates that submit nomination petitions without the requisite signatures are removed from Primary Election ballots. *See, e.g., In re Vodvarka*, 994 A.2d 25 (Pa. Commw. Ct. 2010) (removing candidate for United States Senate from Democratic primary ballot for collecting an insufficient number of signatures).

In contrast, under the Code, "political bodies" must use "nomination papers" to place a candidate on the general election ballot. 25 P.S. § 2911. Under the Election Code, the number

---

[4] The Code also recognizes county political parties and "minor political parties." *See* 25 P.S. §§ 2831, 2872.2. Because none of the Plaintiffs have reached the Code's threshold for party status, this Brief only addresses the distinctions between "political parties" and "political bodies."

3

of signatures required for nomination papers is derived from the previous general election results.  Under the Code,  "the number of qualified electors" who must sign a nomination paper for a candidate from a "political body" must be "at least equal to two per centum of the largest entire vote cast for any elected candidate in the State at large at the last preceding election at which State-wide candidates were voted for."  *Id.*

The number of signatures the Code requires for "nomination papers" is greater than the number the Code requires for "nomination petitions."  *Compare* 25 P.S. §§ 2867, 2872.1 *with* 25 P.S. § 2911.  Despite requiring the collection of more signatures, the Code's structure balances that prerequisite with significant benefits to the candidate who collects "nomination papers" for a "political body."  First, although a "political party" candidate is limited to signatures from registered voters from his or her own party, a "political body" candidate may collect signatures from any registered voters in Pennsylvania, regardless of party affiliation.  *Id.*  Second, candidates who submit "nomination petitions" for a "political party," must first run in and win a primary election.  25 P.S. § 2862.  If a "political body" candidate collects the requisite number of signatures on the nomination papers, that candidate automatically appears on the general election ballot.  25 P.S. § 2911.  Finally, the Code allows only three weeks for the collection of signatures for nomination petitions but allows approximately ten weeks for signature collection for nomination papers.  *Compare* 25 P.S. § 2868 *with* 25 P.S. § 2913(b).

    **C.**     **Judicial Changes to the Comparative Burdens of Political Parties and Political Bodies Under the 2018 Consent Order and Act 77**

    **1.**     **The 2018 Consent Order**

Under a 2018 consent order issued by this Court, the number of signatures required for political bodies was reduced significantly.  *See The Constitution Party of Pennsylvania v.*

*Aichele*, Case No. 5:12-cv-002726 (E.D. Pa. Feb. 1, 2018) ("2018 Consent Order").[5] Instead of requiring the signatures of two percent of the highest vote-getting candidate in the previous general election, under the Consent Order, political body candidates are required to collect only a set number of signatures, which substantially reduces the number of signatures required. *Id.* For example, under the Code's terms, the political body would have needed to collect 61,141 signatures to nominate a candidate for Governor in 2018.[6] Under the 2018 Consent Order, however, that number has been reduced to 5,000 signatures.

That reduction in signatures, however, did not alter any of the other provisions of the Code that give political bodies benefits not allowed to political parties. Political bodies are still permitted to collect signatures from any registered voters in Pennsylvania, while political parties are limited to signatures only from registered party members. Political party candidates have only three weeks to collect signatures, while political body candidates continue to have approximately ten weeks to gather signatures. Finally, a political body candidate who collects the requisite number of signatures, will appear on the General Election ballot, without participating in a Primary Election. A candidate representing a political party must first prevail in the Primary Election. (*See* 2018 Consent Order generally).

As a result, the 2018 Consent Order altered the Code's balance of burdens and benefits by exclusively providing benefits to political bodies. Notably, the 2018 Consent Order was entered in a matter where: 1) neither political party was made a party to the dispute; and 2) the

---

[5] There, political bodies challenged the Code's two percent requirement as unconstitutional.

[6] In the 2016 General Election, the last statewide election held for non-judicial offices, Attorney General Josh Shapiro received the largest number of votes, 3,057,010. 2016 Election Results, PA. DEPT. OF STATE, https://electionreturns.pa.gov/General/SummaryResults?ElectionID=54&ElectionType=G&IsActive=0 (last visited June 1, 2020). The Code's 2% requirement calculates out to 61,141 signatures.

5

named governmental officials chose to enter the consent order rather than defend the existing balance between political parties and political bodies set out by the General Assembly.

### 2. Act 77

In 2019, the General Assembly relaxed the Code's procedural requirements with respect to signature gathering. Under Act 77, nomination papers and petitions no longer need a notarized affidavit to be submitted. *See* PA Act 77 of 2019 (changes to 25 P.S. § 2911). As a result, ***any*** registered voter can fill out a nomination paper by himself or herself (as both the signatory and the circulator of that signature) and mail the nomination paper to the political body, ***without physical interaction with any other person***. *Id*. For example, a political body could target its preferred 1% of the registered voters in Pennsylvania,[7] request that they fill out a nomination paper, and mail it back to the political body. In that situation, the political body would need only a 5.8% response rate (of the limited 1% class of registered voters) to collect 5,000 signatures, the maximum required under the 2018 Consent Order.

The combined effect of the 2018 Consent Order and the recent changes to the Code through Act 77 make the collection of nomination paper signatures a readily achievable goal. Plaintiffs' representations at the May 27, 2020 status conference that, for political bodies, signature gathering could require "illegal activities," were statements without any factual or legal predicate.

### D. Political Party Candidates' Investment In The 2020 Primary Election

As the Code requires, the candidates in the Pennsylvania Democratic Party 2020 Primary Election complied with the Election Code and applicable court orders. Each gathered his or her

---

[7] According to the Department of State's most recent voter registration tabulation (*see* fn. 1, *infra*), there are 8,599,074 registered voters in Pennsylvania.

required signatures in three weeks and expended significant costs to do so. Many are now running in competitive primaries. Money, time, and resources that could have been spent on the general election have instead been spent complying with the requirements of the Code. Those investments were made against the backdrop of coordinate obligations on political bodies. Plaintiffs now ask that all requirements of the Code for their candidates be eliminated, and that they receive an automatic general election ballot position without any effort. In short, they ask that political parties comply with all of the costs and burdens of the Code, and that political bodies comply with none.

### III.     LEGAL ARGUMENT

**A.     The Legal Standard For Intervention**

Rule 24 of the Federal Rules of Civil Procedure governs intervention by non-parties. The Rule provides, in pertinent part, as follows:

  a. <u>Intervention of Right.</u>  On a timely motion, the court must permit anyone to intervene who:

    ….

    2. claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

  b. <u>Permissive Intervention</u>

    1. <u>In General</u>.  On timely motion, the court may permit anyone to intervene who:

    ….

     (b) has a claim or defense that shares with the main action a common question of law or fact.

>    ….
>
>    3.  <u>Delay or Prejudice.</u>  In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

Fed. R. Civ. P. 24.

The Third Circuit, applying Rule 24, has held that a party may intervene as of right if it can demonstrate: "(1) a sufficient interest in the litigation; (2) a threat that the interest will be impaired or affected, as a practical matter, by the disposition of the action; and (3) that its interest is not adequately represented by the existing parties to the litigation." *Pennsylvania v. President United States of America*, 888 F.3d 52, 57 (3d Cir. 2018).  The Pennsylvania Democratic Party satisfies all three requirements for intervention in this matter.

**B.     Courts Have Consistently Recognized That Political Parties Have Cognizable Interests In Cases Challenging General Election Procedure**

The Pennsylvania Democratic Party, like other political organizations, has distinct interests in litigation that challenges general election procedure, namely protecting Democratic candidates in competing in a free and fair election and further protecting registered Democratic voters' rights to an effective vote.  *See Orloski v. Davis*, 564 F.Supp. 526 (M.D. Pa. 1983); *Pennsylvania Democratic Party v. Republican Party of Pennsylvania*, Civ. No. 16-5664, 2016 WL 6582659 (E.D. Pa. Nov. 7, 2016).

Both the Pennsylvania Democratic Party and the Pennsylvania Republican Party have been permitted to intervene in cases addressing the conduct of the general election.  *See, e.g.*, *Pierce v. Allegheny County Bd. of Elections*, 324 F.Supp.2d 684 (W.D. Pa. 2003) (addressing Republican challenge to third-party delivery of absentee ballots and noting the intervention of the Pennsylvania Democratic Party); *Stein v. Cortes*, 223 F.Supp.3d 423 (E.D. Pa. 2016)

(addressing recount demand for 2016 general election ballots and noting the intervention of the Pennsylvania Republican Party).

This right to intervene is recognized nationally. In *Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp. 3d 1324 (N.D. Ga. 2018), the state Democratic Party sued state election officials over the procedure for canvasing and curing provisional ballots. The court expressly held that the Democratic Party of Georgia had organizational standing to bring such a challenge. *Id*. The federal court further permitted the Republican Party of Georgia to intervene in the proceedings and thereafter oppose the relief requested by the Democratic Party in a *pro forma* slip opinion order. *Id*. at [ECF 40] (N.D. Ga. Nov. 14, 2018). Similarly, in *Democratic Exec. Comm. of Florida v. Detzner*, 347 F. Supp. 3d 1017 (N.D. Fla. 2018), the Democratic Party sued state election officials over rejected provisional ballots. Again, the federal court expressly found that the state Democratic party had standing to bring such claims on behalf of its voters. *Id*. Further, the federal court again permitted an opposing political party, the National Republican Senatorial Committee, to intervene in the matter in a *pro forma* slip opinion order. *Id*. at [ECF 20] (N.D. Fla. Nov. 8, 2018).

State parties have a cognizable interest in intervening in lawsuits regarding general election procedure. This matter is no exception.

 1. **The Pennsylvania Democratic Party has an interest in protecting its candidates to compete in free and fair elections.**

The Pennsylvania Democratic Party is a political party representing registered voters of the Democratic Party. It promotes and protects its members and its nominees in contention for public office. It works to increase voter turnout to elect Democratic candidates at the federal, state and local levels and monitors the election process to ensure that all eligible voters have their votes protected.

Courts in this Commonwealth have held that political associations have standing to protect the interests of their candidates, including challenges to general election balloting procedures. *See Orloski*, 564 F.Supp. at 531. There, the Court granted the Democratic Party's motion to intervene in challenging the Pennsylvania statue (42 P.S.C.A. § 3133) governing the election of Commonwealth Court judges. *Id*. at 529.[8] Apparently to encourage a bipartisan bench, that statute provided that where, in that particular situation, there were three vacancies on the court, a political party could only nominate two candidates. The Pennsylvania Democratic Party asserted that the statute unconstitutionally diluted the voting power of voters and argued that its members' voting strength was "worth less in electing their preferred choices than the fewer minority party votes are worth in electing their single candidate." *Id*. The court expressly held that the Pennsylvania Democratic Party had sufficient interest in the matter to raise their claim, and held that because it "endorse[d] and support[ed] candidates for each statewide judicial office in the Commonwealth," it had a right to participate in the litigation. *Id*. at 530-531.

Similar to the challenge in *Orloski*, where the election process itself was at issue, the Pennsylvania Democratic Party has an interest in protecting its candidates in the general election in November. The Pennsylvania Democratic Party is a state party organization affiliated with the National Democratic Party, which endorses and supports its candidates for each statewide election in the Commonwealth. Further, the Pennsylvania Democratic Party supports its candidates from President to the most local of races. The relief that the Plaintiffs demand here would undermine the fairness of the election and harm the Democratic candidates. The Pennsylvania Democratic Party is entitled to protect and defend its candidates. *See id*.; *see also*

---

[8] In *Orloski*, the named party was the Pennsylvania Democratic State Committee, the executive body of the Pennsylvania Democratic Party. The Pennsylvania Democratic Party uses both names in varying contexts. *See generally* Rules of the Pennsylvania Democratic Party.

*Democratic Party of the United States v. Nat'l Conservative Political Action Comm.*, 578 F.Supp. 797, 810 (E.D. Pa. 1983) (holding the Democratic Party had Article III standing to challenge presidential election campaign funding statute because "speech that reduces the likelihood of its nominee's victory injures the Democratic Party in more than an ideological way."), *aff'd in part and rev'd in part on other grounds sub nom* 470 U.S. 480 (1985); *Texas Democratic Party v. Benkiser*, 459 F.3d 582, 587 (5th Cir. 2006) (noting that "a political party's interest in a candidate's success is not merely an ideological interest.  Political victory accedes power to the winning party, enabling it to better direct the machinery of government toward the party's interests.") (citation omitted).[9]

In *Pa. Democratic Party*, this Court expressly found organizational standing for the Pennsylvania Democratic Party.  *Pa. Democratic Party*, 2016 WL 6582659 at *3.  In a lawsuit alleging voter intimidation in the 2016 presidential election, the court found that the Pennsylvania Democratic Party rightfully could bring the claim to protect "the interests of both Democratic candidates running for office and Democratic voters." *Id*.  The Pennsylvania Democratic Party has an identical interest in protecting its candidates in this election.

    **2.**    **The Pennsylvania Democratic Party has an interest in protecting its own voters and members.**

The Pennsylvania Democratic Party has a cognizable interest to protect its own voters and members in the general election.  As noted, in *Pa. Democratic Party*, this Court found

---

[9] In their opposition to the Motion to Intervene, Plaintiffs baldly assert that the Pennsylvania Democratic Party cannot intervene because "there is no constitutional right to keep competitors off of the ballot…"  (Resp. in Opp. At 5-6).  Plaintiffs cite no case law in support of this proposition; instead, they merely cite a law review article written by its own counsel. *Id.*  More fundamentally, Plaintiffs misconstrue the Pennsylvania Democratic Party's interest.  It is undeniable that the Pennsylvania Democratic Party has an interest in the conduct of general elections as it relates to its voters.  When its voters and candidates are required to comply with existing law, it has an interest in verifying that other political organizations comply with their comparative obligations.  To categorize that interest as "a right to keep competitors off the ballot" misconstrues the Party's position before it has a chance to intervene to present its response to the requested relief.

11

standing for the Pennsylvania Democratic Party in its effort to protect its voters. *Pa. Democratic Party*, 2016 WL 6582659 at *3. The court found that the Pennsylvania Democratic Party "works to elect Democrats from the top of the ticket on down in local, county, state, and federal elections." *Id*. In representing their own voters, the party had standing to bring suit and protect its interests. *Id*. The court in *Orloski* also found that, beyond the interests of its candidates (*see* § III B, *supra*), the Pennsylvania Democratic Party had standing to protect its voters. *Orloski*, 564 F.Supp. at 531 (holding "[t]he right of a party…to a place on the ballot is entitled to protection and is intertwined with the rights of voters."). The Pennsylvania Democratic Party in *Orloski* challenged the constitutionality of the statute under voter dilution concerns because it limited the number of major party votes. *Id*. at 529. Here, as in *Orloski*, giving any minor party candidate, with no proven support, an automatic name on the ballot has the effect of diluting Democratic votes, undercutting the efforts to participate in a statutorily mandated primary election, and thus diminishing their collective voice by ignoring statutory requirements applicable to political bodies. Further, Courts in the Third Circuit have stated that "an applicant typically has a right to intervene where…the applicant is the 'real party in interest' and 'would have standing to raise the claim' itself." *Kitzmiller v. Dover Area School Dist.*, 229 F.R.D. 463, 467 (M.D. Pa. 2005) (citation omitted); *see also Am. Farm Bureau Fed'n. v. U.S. E.P.A.*, 278 F.R.D. 98, 107 n.3 (M.D. Pa. 2011) (finding standing for proposed intervenors challenging E.P.A. regulation and noting that "because Article III standing requirements are more stringent [than] those for intervention under rule 24(a), [] the determination that [the applicants] have standing under Article III compels the conclusion that they have an adequate interest under the rule.") (citation omitted). Because Pennsylvania courts have explicitly held that political parties have standing to challenge general election procedures on behalf of their party, candidates, and

voters, this Court can and should find that the Pennsylvania Democratic Party has an interest in this litigation.

For these reasons, the Pennsylvania Democratic Party has a legally recognized interest in protecting its own voters and members.

C.     **The Party's Cognizable Interests Are Impaired By The Requested Relief**

The relief that the Plaintiffs demand here would directly and substantially impair the rights and interests of the Pennsylvania Democratic Party.[10]  Impairment is a "diminution, however small, in strength, value, quality, or quantity."  6 Moore's Fed. Practice, § 24.03(3)(a).  Pennsylvania courts "'may consider any significant legal effect on the applicant's interest,' including a decision's *stare decisis* effect or a proposed remedy's impact on the applicant for intervention."  *President*, 888 F.3d at 59.  Pennsylvania also follows a "policy preference which, as a matter of judicial economy, favors intervention over subsequent collateral attacks."  *Id*.

Plaintiffs' requested relief would undermine the fairness of the nomination procedures, harm the competitive environment of the elections, and effectively decrease the power of a legitimate Democratic voter.  (*See* § III B, *supra*).  Democratic candidates who have expended large amounts of time, money, and other resources, will be directly harmed by the participation of additional candidates in a particular race, many of whom will have exhibited no prior public support through a primary election, or, at the very least, by obtaining a small fraction of the signatures required under the Code, as modified by the Consent Order.[11]  Registered Democratic voters would lose voting power with the addition of multiple candidates potentially focused on

---

[10] An intervenor "must demonstrate that [its] legal interests may be affected or impaired[ ] as a practical matter by the disposition of the action."  *President*, 888 F.3d at 59 (citations omitted).

[11] The substitution of candidates of political bodies also could lead to a potential for voter confusion.  Further, with no threshold imposed at all, any organization could add a candidate with the thought of reducing the votes of the Democratic candidate.

13

the gamesmanship in impacting the vote totals for the political party candidates without having any realistic opportunity to win a majority of votes. The Code was set up to avoid this situation, and it would be unfair to compel party candidates to adhere to the Code requirements while other candidates do not. Plaintiffs' requested relief would *irreparably* harm the Pennsylvania Democratic Party because "infringement on voting rights 'cannot be alleviated after the election.'" *Stein*, 223 F.Supp.3d at 439 (citations omitted). Without intervention, the Pennsylvania Democratic Party would have no way to appeal the Court's ruling should it grant relief the Plaintiffs seek. The Democratic Party would likewise have no way to vindicate its rights in a separate action following resolution of this action because of *stare decisis* and *res judicata*. Accordingly, Plaintiffs' requested relief would directly and substantially impair the Pennsylvania Democratic Party's cognizable interests.

### D. The Party's Cognizable Interests Are Not Adequately Represented By The Existing Defendants

The named defendants are executive officers and election officials in the Commonwealth. They are statutorily required to remain impartial in elections. They cannot adequately represent the Pennsylvania Democratic Party's cognizable interests. Interests "are not adequately represented if they diverge sufficiently from the interests of the existing party, such that 'the existing party cannot devote proper attention to the applicant's interests.'" *President*, 888 F.3d at 60 (citations omitted). The burden is minimal, and in the case of a governmental entity whose views are colored by public welfare rather than more personal interests of the intervenor, "the burden is comparatively light." *Id*. at 60-61. The Pennsylvania Democratic Party's interests diverge from the Commonwealth's because the Pennsylvania Democratic Party's purpose is to protect its own party, candidates, and voters, which political parties have a distinct right to

protect. *See Orloski*, 564 F.Supp. at 531; *Pa. Democratic Party*, 2016 WL 6582659 at *3. These interests are directly opposed to the Plaintiffs' interests here.

As elected officials, the named defendants are tasked with balancing multiple interests beyond the Code's substance. The 2018 Consent Order, where the political parties were not participants and political bodies received significant benefits under the Code without comparative changes for political parties, demonstrates that the Commonwealth's executive officers and their predecessors are, at times, willing to settle disputes in lieu of defending the constitutionality of the system the General Assembly created. There is no guarantee that the Defendants would sufficiently represent the interests of the Pennsylvania Democratic Party. *See President*, 888 F.3d at 60-61 (finding the government's complex and competing interests with regulations under the Affordable Care Act could not guarantee that it would sufficiently attend to a religious association's interests). The Pennsylvania Democratic Party has a particularized interest in preventing minor political bodies from hauling already overworked state officials into court every two years and enter into serial consent decrees that, case after case, chip away at the balance between political parties and political bodies the General Assembly has established. *Cf. League of Women Voters of Virginia v. Virginia State Bd of Elections*, Case No. 6:20-cv-24, 2020 WL 2090678 at *5 (W.D. Va. Apr. 30, 2020) ("In this regard, the [Republican Party of Virginia's] inclusion in this action would ensure helpful adversarial testing to the parties' proposed partial consent decree, which would be beneficial to the Court and the overall adjudication of this action.").

For these reasons, the Pennsylvania Democratic Party have separate and distinct interests that the named Defendants will not adequately defend, and intervention should be granted.[12]

---

[12] Contrary to Plaintiffs' opposition, the Pennsylvania Democratic Party's Motion was timely. It was filed within a day of the Pennsylvania Democratic Party being made aware of the May 27, 2020 status conference and before the

### E.     Alternatively, Permissive Joinder Is Appropriate To Protect The Party's Interests

In the alternative, this Court should recognize that the Pennsylvania Democratic Party may intervene permissively under Fed. R. Civ. P. 24(b).  Rule 24(b) allows for intervention where "a claim or defense that shares with the main action a common question of law or fact" exists and a timely application is made.  Fed. R. Civ. P. 24(b)(1)(b).  It is within the trial court's discretion to determine whether intervention would "unduly delay or prejudice the adjudication of the rights of the parties."  *Kitzmiller v. Dover Area School Dist.*, 388 F.Supp.2d 484, 486 (M.D. Pa. 2005) (holding that in granting permissive intervention, "courts consider whether the proposed intervenors will add anything to the litigation.").  For the same reasons that support intervention as of right, the Pennsylvania Democratic Party's motion meets all the requirements for permissive intervention, and it would not cause any prejudice to the original parties.  Specifically, the Pennsylvania Democratic Party's claims and defenses directly relate to the same Code sections and nomination processes under which Plaintiffs seek relief.

Further, allowing the Pennsylvania Democratic Party to intervene would aid the Court with its expertise in the political election process and in the "adversarial testing" to the parties' dispute.  *See League of Women Voters*, 2020 WL 2090678 at *5 (granting permissive intervention to the Republican Party of Virginia where the existing parties had continued to reach consent orders).

For these reasons, intervention should be granted.

---

status conference.  Allowing the Pennsylvania Democratic Party to intervene would in no way delay or prejudice the parties.  *See In re Safeguard Scientifics*, 220 F.R.D. 43, 49 (E.D. Pa. 2004) (denying permissive intervention because of undue delay and prejudice where intervention would essentially require reopening the case for additional discovery and "inflicting potentially significant additional delays, costs and expenses on the existing parties."); *see also President*, 888 F.3d at 59 (citing Pennsylvania's policy favoring intervention).  Thus, if this Court were to refuse to grant intervention as of right, it should permit the Democratic Party's intervention under Fed. R. Civ. P. 24(b).

## CONCLUSION

The Pennsylvania Democratic Party respectfully asks this Honorable Court to GRANT its Motion to Intervene and permit it to participate in this matter as an Intervenor.

                                             Respectfully submitted,

                                             DENTONS COHEN & GRIGSBY P.C.

                                             By: /s/ Clifford B. Levine
                                                      Clifford B. Levine
                                                      Pa. Id. No. 33507
                                                      Alex M. Lacey*
                                                      Pa. Id. No. 313538

                                                      625 Liberty Avenue
                                                      Pittsburgh, PA  15222-3152
                                                      (412) 297-4900

                                           On behalf of Pennsylvania Democratic Party, Intervenor

                                           *Pro Hac Vice forthcoming for this action.*

June 3, 2020

3354815.v3