## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

LIBERTARIAN PARTY OF        :
PENNSYLVANIA; THE            :
CONSTITUTION PARTY OF      :
PENNSYLVANIA; GREEN PARTY OF :
PENNSYLVANIA; STEVE SCHEETZ; :
KEVIN GAUGHEN; ALAN SMITH;    :
TIMOTHY RUNKLE; BOB GOODRICH:
and JUSTIN MAGILL,           :
                                      :

         **Plaintiffs,**           :
                                      :

     v.                         :      NO. 20-CV-02299
                                      :

TOM WOLF, in his official capacity of    :      JUDGE SMITH
Governor of the Commonwealth of      :
Pennsylvania; KATHY BOOCKVAR, in    :      ELECTRONICALLY FILED
her official capacity as Secretary of the   :
Commonwealth of Pennsylvania; and     :
JONATHAN M. MARKS, in his official    :
capacity as Deputy Secretary for Elections :
and Commissions,               :
                                      :

         **Defendants.**          :

## DEFENDANTS' MEMORANDUM OF LAW
## IN SUPPORT OF MOTION TO DISMISS

Daniel T. Brier
Donna A. Walsh
Richard L. Armezzani
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

Attorneys for Defendants

# TABLE OF CONTENTS

INTRODUCTION ................................................................................ 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 3

ARGUMENT ...................................................................................... 8

    I.    Plaintiffs Fail To Allege a Plausible Claim Against Governor
        Wolf ..................................................................................... 9

    II.   Plaintiffs' Alleged Harm is Speculative and, as a Result, There
        Is No Case or Controversy ................................................. 11

    III.  The Federal Court Order Establishing the Signature Requirement
        and Filing Deadline Is Not State Action............................... 14

    IV.  Plaintiffs Fail To Allege a Constitutional Violation.......................... 15

    V.   Any Challenge to the Stay-at-Home Restriction Is Moot ................. 20

CONCLUSION ................................................................................. 21

# TABLE OF AUTHORITIES

## CASES

*Anderson v. Celebrezze*, 460 U.S. 780 (1983) ...................................... 15

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ............................................... 8

*Baldwin v. Cortes*, 378 F. App'x 135 (3d Cir. 2010)............................. 7

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ............................ 3, 8

*Burdick v. Takuski*, 504 U.S. 428 (1992) ........................................... 15

*Burtch v. Milberg Factors, Inc.*, 662 F.3d 212 (3d Cir. 2011).............. 8

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995)................................. 15

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .......................... 12

*Clingman v. Beaver*, 544 U.S. 581 (2005) .......................................... 15

*Constitution Party of Pa. v. Cortes*, 116 F. Supp. 3d 486 (E.D. Pa.
    2015), *aff'd*, 824 F.3d 386 (3d Cir. 2016) ..................................... 16

*Constitution Party of Pa. v. Cortes*, 824 F.3d 386 (3d Cir. 2016) .......... 6

*District of Columbia v. Carter*, 409 U.S. 418 (1973) ......................... 14

*Esshaki v. Whitmer*, No. 20-1336, 2020 WL 2185553 (6th Cir. May 5, 2020)...... 19

*Ex Parte Young*, 209 U.S. 123 (1908) .................................................. 9

*Friends of Danny DeVito v. Wolf*, No. 68 MM 2020, --- A.3d ---, 2020
    WL 1847100 (Pa. Apr. 13, 2020), *petition for certiorari filed*, No.
    19-1265 (Apr. 27, 2020).................................... 2, 16, 17, 18, 19

*Friends of Danny DeVito v. Wolf*, No. 19A1032, --- S. Ct. ---, 2020 WL
    2177482 (May 6, 2020) ................................................................. 18

*Hindes v. FDIC*, 137 F.3d 148 (3d Cir. 1998) ............................................................ 9

*Kentucky v. Graham*, 473 U.S. 159 (1985) ................................................................ 9

*Kimel v. Fla. Bd. of Regents*, 528 U.S. 62 (2000) ...................................................... 9

*Libertarian Party of Illinois v. Pritzker*, No. 20-CV-2112, 2020 WL
  1951687 (N.D. Ill. Apr. 23, 2020)........................................................................ 19

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992).................................... 11, 12, 13

*McClesky v. Kemp*, 481 U.S. 279 (1987) .................................................................. 19

*New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25
  (3d Cir. 1985) ...................................................................................................... 20

*Packinghgam v. North Carolina*, 137 S. Ct. 1730 (2017)........................................ 17

*Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) ......................................... 9, 12

*Spokeo, Inc. v. Robbins*, 136 S. Ct. 1540 (2016) ............................................... 11, 12

*South Bay United Pentecostal Church v. Newsom*, No. 19A1044, --- U.S. ---,
  2020 WL 2813056 (May 29, 2020)....................................................................... 18

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961)................................... 3

*Warth v. Seldin*, 422 U.S. 490 (1975) ...................................................................... 12

*Whitmore v. Arkansas*, 495 U.S. 149 (1990)............................................................ 12

*Will v. Michigan Dept. of State Police*, 491 U.S. 58 (1989) .................................... 10

## STATUTES

U.S. Const. art. III, § 2 ............................................................................................. 11

42 U.S.C. § 1983  ............................................................................. 2, 5, 7, 14, 15

35 Pa.C.S. § 7301(c) ................................................................... 3

25 P.S. § 2011(b) ......................................................................... 7

25 P.S. § 2911 ........................................................................ 6, 18

25 P.S. § 2911(b) ................................................................ 6, 7, 14

25 P.S. § 2913(b) ......................................................................... 19

25 P.S. § 2913(c) ........................................................................... 7

25 P.S. § 2937 ......................................................................... 6, 7

25 P.S. § 2621(a) ......................................................................... 10

25 P.S. § 2621(d) ......................................................................... 10

25 P.S. § 2877.2(a) ........................................................................ 8

Fed. R. Civ. P. 12(b)(1) ............................................................ 9, 21

Fed. R. Civ. P. 12(b)(6) ........................................................ 3, 8, 21

# **INTRODUCTION**

The day before the stay-at-home order was set to be lifted in 13 additional counties, bringing to 37 the total number of counties relieved of the stay-at-home restriction, and with more than two-and-a-half months remaining before the nomination paper deadline, Plaintiffs commenced this action requesting that their candidates be relieved of any signature gathering requirement and that they be automatically placed on the general election ballot without *any* show of support. They contend that the signature requirement is unconstitutional as applied to them in light of the public health emergency caused by COVID-19. Plaintiffs' claims fail as a matter of law for at least five different reasons.

First, Plaintiffs do not allege a potentially viable claim for injunctive relief against Governor Tom Wolf. The stay-at-home orders have already been lifted. There is no claim for relief against the Governor and no basis to keep the Governor as a defendant.

Second, there is no requisite case or controversy. Plaintiffs' allegations of harm are entirely conjectural. They posit that it is "impossible" to obtain the required signatures prior to the August 3, 2020 deadline but the stay-at-home orders have been lifted and nearly two months remain in the signature gathering

period. Plaintiffs do not and cannot plausibly allege facts demonstrating that the signature requirement is out of their reach. They plainly lack standing.

Third, the signature requirement that Plaintiffs seek to avoid appears in a federal court order that resolved earlier litigation on another election issue. The order is not state action for purposes of 42 U.S.C. § 1983.

Fourth, there is no constitutional violation. The Pennsylvania Supreme Court has already determined that the Governor's executive order compelling the temporary closure of physical operations at non-life-sustaining businesses was a proper exercise of executive authority, was reasonably tailored to meet the exigencies of COVID-19 and did not infringe on rights guaranteed by the First or Fourteenth Amendments. *Friends of Danny DeVito v. Wolf*, No. 68 MM 2020, --- A.3d ---, 2020 WL 1847100 (Pa. Apr. 13, 2020), *petition for certiorari filed*, No. 19-1265 (Apr. 27, 2020). There is no basis for this Court to conclude otherwise.

Fifth, Plaintiffs' challenges to the stay-at-home orders are moot. The restrictions were lifted on a county-by-county basis beginning on May 8, 2020 and were fully lifted as of June 5, 2020. Injunctive relief is no longer possible with respect to those orders.

For these reasons, Plaintiffs have failed to state a plausible claim for relief and this Court lacks jurisdiction. The Complaint should be dismissed.

# FACTUAL BACKGROUND AND PROCEDURAL HISTORY

In December 2019, an outbreak of respiratory disease caused by a novel Coronavirus, now known as COVID-19, emerged in Wuhan, China and quickly spread to other parts of the world, causing the World Health Organization to declare a public health emergency of international concern on January 30, 2020. Compl. (ECF No. 1) ¶¶ 28-29.[1] The virus is easily spread from person to person and can result in serious illness and death. *Id.* ¶ 29.

In light of this extraordinary health emergency, Governor Wolf proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa.C.S. § 7301(c) on March 6, 2020. Compl. ¶ 34. On March 19, 2020, Governor Wolf issued an order temporarily closing non-life-sustaining businesses to prevent the spread of the virus. *Id.* ¶ 37. The order specifically states that "virtual" and "telework operations" would not be restricted.[2] On March 23, 2020, Governor Wolf issued a stay-at-home order for individuals residing in seven

---

[1] The allegations in the Complaint are accepted as true for purposes of this motion in accordance with Rule 12(b)(6) of the Federal Rules of Civil Procedure. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

[2] *See* Order of the Governor of the Commonwealth of Pennsylvania Regarding the Closure of All Businesses That Are Not Life Sustaining, https://www.governor.pa.gov/wp-content/uploads/2020/03/20200319-TWW-COVID-19-business-closure-order.pdf (last visited June 5, 2020). The Court may take judicial notice of the Governor's Orders and Amendments pursuant to Rule 201 of the Federal Rules of Evidence. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 332 & n.10 (1961) (taking judicial notice of government publication).

Pennsylvania counties. Compl. ¶ 38. By various orders issued between March 24, 2020 and March 31, 2020, Governor Wolf extended the stay-at-home restriction to 26 additional counties. *Id.* ¶¶ 39-40, 42-45. On April 1, Governor Wolf issued a statewide stay-at-home order effective until April 30, 2020. *Id.* ¶ 46. None of the stay-at-home orders prohibited or limited signature-gathering or campaigning. Plaintiff allege that they and their candidates have been campaigning throughout the period covered by the stay-at-home orders. *Id.* ¶¶ 14 & n.4, 18 & n.5.

On April 22, 2020, Governor Wolf implemented a process to "reopen Pennsylvania" with a targeted May 8, 2020 start date. *Id.* ¶ 47. The reopening plan involved classifying counties for reopening from red to yellow to green phases. The red phase maintains stay-at-home restrictions. The yellow phase lifts the stay-at-home restriction and allows gatherings of up to 25 people. *Id.* ¶¶ 48-49. The green phase lifts or lessens other restrictions and allows gatherings of up to 250 people.[3]

The stay-at-home restrictions began to be lifted as planned on May 8, 2020. *Id.* ¶ 50. Twenty-four counties moved into the yellow phase on May 8, *id.*, another 13 moved to yellow beginning May 15, *id.* ¶ 51, and it was announced on May 15

---

[3] *See* Process to Reopen Pennsylvania, https://www.governor.pa.gov/process-to-reopen-pennsylvania/ (last visited June 5, 2020).

that another 12 counties would move to the yellow phase on May 22.[4]  On May 29, 18 counties moved to the green phase.[5]  As of June 5, 2020, all counties in Pennsylvania have transitioned to the yellow phase, meaning that they are relieved of the stay-at-home and travel restrictions and gatherings of up to 25 people are permitted.  And, as of June 5, an additional 16 counties went to green, which resulted in lesser restrictions and permits gatherings of up to 250 people in the 34 counties that are green as of the date of this filing.[6]

On May 14, 2020, in the midst of the reopening plan, Plaintiffs initiated this action under 42 U.S.C. § 1983 requesting that their candidates be relieved of any obligation to collect signatures and that they be placed automatically on the general election ballot.  The Plaintiff organizations are "political bodies."  Compl. ¶ 6.  They do not participate in primaries, but rather circulate nomination papers and

---

[4] *See* Amendment to the Order of the Governor of the Commonwealth of Pennsylvania For Limited Opening of Businesses, Lifting of Stay At Home Requirements, And Continued Aggressive Mitigation Efforts, https://www.governor.pa.gov/wp-content/uploads/2020/05/20200521-TWW-Yellow-Phase-Order-Amendment.pdf (last visited June 5, 2020).

[5] *See* Order of the Governor of the Commonwealth of Pennsylvania For the Continued Reopening of the Commonwealth, https://www.governor.pa.gov/wp-content/uploads/2020/05/20200527-TWW-green-phase-order.pdf (last visited June 5, 2020).

[6] *See* Amendment to the Order of the Governor of the Commonwealth of Pennsylvania for the Continued Reopening of the Commonwealth, https://www.governor.pa.gov/wp-content/uploads/2020/06/20200604-TWW-amendment-to-green-phase-order.pdf (last visited June 5, 2020).

obtain signatures from voters as a means of demonstrating voter support necessary to be placed on the general election ballot. *Id.* ¶ 5.

Until 2016, the signature requirement in Pennsylvania was outlined in 25 P.S. § 2911. Compl. ¶ 8. In 2016, the U.S. Court of Appeals for the Third Circuit affirmed the judgment of this Court in *Constitution Party of Pa. v. Cortes* holding that the signature requirement in 25 P.S. § 2911(b), when coupled with the signature validation procedure in 25 P.S. § 2937 which allowed an award of costs to persons opposing nomination papers, substantially burdened political bodies' associational rights and were unconstitutional as applied. *See Constitution Party of Pa. v. Cortes*, 824 F.3d 386 (3d Cir. 2016).

On remand, the district court in *Constitution Party of Pa.* entered an Order on February 1, 2018 establishing a new process for political body candidates to qualify for the general election ballot. Compl. ¶¶ 7-9. The February 1, 2018 Order directs that, "[u]ntil such time as the Pennsylvania Legislature enacts a permanent measure amending or modifying the process to place the plaintiff political bodies on the general election ballot and this change is signed by the Governor of Pennsylvania," nomination papers shall be due by August 1 and the number of signatures required would be substantially reduced as specifically set forth in the

Order. Compl., Ex. A, p.1 & ¶ 1.[7]  In addition, the Order directs that no candidate shall be assessed costs under 25 P.S. § 2937. *Id.* ¶ 3. Further, the Order states that it is "intended to replace the signature requirement imposed by 25 P.S. § 2911(b)." *Id.* ¶ 4. Pursuant to the February 1, 2018 Order, the deadline for Plaintiffs to submit nomination papers for the November 3, 2020 general election is August 3, 2020 (August 1 is a Saturday). *Id.* ¶ 1.

Plaintiffs filed their Complaint on May 14, 2020 alleging three claims under 42 U.S.C. § 1983. They allege that the ballot access requirements for minor political parties and for political bodies "[u]nder present circumstances" violate associational rights guaranteed by the First and Fourteenth Amendments, (Count I), violate rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment (Count II) and violate the right to due process guaranteed by the Due Process Clause of the Fourteenth Amendment (Count III). They seek a declaratory judgment (1) prohibiting enforcement of the supporting signature requirement for candidates for office for the November 3, 2020 general election; (2) directing

---

[7] The reduction in the number of signatures mandated by the February 1, 2018 Order is substantial. For example, under 25 P.S. § 2911(b), political body candidates for President and Vice-President would have required more than 61,000 signatures to appear on the general election ballot in November 2020, but they require only 5,000 signatures under the February 1, 2018 Order. In addition, whereas 25 P.S. § 2911(b) required a certain number of signatures from each county in statewide races, the February 1, 2018 Order eliminated this requirement. Further, the February 1, 2018 Order set the deadline for submitting nomination papers as August 1. This is consistent with consent decrees in prior litigation which extended the deadline from "the second Friday subsequent to the primary," 25 P.S. § 2913(c), to August 1. *See Baldwin v. Cortes*, 378 F. App'x 135, 137 (3d Cir. 2010).

Defendants to accept their candidates' nomination papers for the November 3, 2020 general election without requiring any supporting signatures from voters, and (3) directing Defendants to place their candidates' names on the November 3, 2020 general election ballot. Compl. at 26-27. Plaintiffs filed a motion for temporary restraining order and/or preliminary injunction on May 19, 2020.[8]

## ARGUMENT

To survive a motion to dismiss under Rule 12(b)(6), a complaint must allege facts that, accepted as true, "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). A plaintiff must provide more than "labels and conclusions" and "a formulaic recitation of the elements of a case of action will not do." *Id.* In considering a motion to dismiss under Rule 12(b)(6), a court should assume the veracity of well-pleaded factual allegations in the complaint and then determine whether they plausibly give rise to an entitlement to relief. *Burtch v. Milberg Factors, Inc.*, 662 F.3d 212, 221 (3d Cir. 2011) (citation and quotation marks omitted). Similarly, in considering a

---

[8] Plaintiffs are not "minor political parties" as defined in 25 P.S. § 2877.2(a). Accordingly, they lack standing to seek relief on behalf of such organizations. All requests for relief on behalf of those entities should be stricken. *See, e.g.*, Compl. ¶¶ 1 & pp. 26-27.

challenge to standing under Rule 12(b)(1), the allegations in the complaint are taken as true in assessing whether the jurisdiction of the court is properly invoked. *Reilly v. Ceridian Corp.*, 664 F.3d 38, 41 (3d Cir. 2011). Application of these standards requires the conclusion that Plaintiffs fail to allege a viable claim and lack standing.

## I. Plaintiffs Fail To Allege a Plausible Claim Against Governor Wolf.

Plaintiffs recite the various executive orders issued by Governor Wolf and assert that the combination of those orders and the signature requirements in the February 1, 2018 Order infringe on their constitutional rights. However, they do not seek any relief from Governor Wolf, nor do they allege any plausible basis for any prospective injunctive relief against the Governor.

The Eleventh Amendment bars suits in federal court against nonconsenting states. *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 73 (2000). An exception to Eleventh Amendment immunity is recognized when a state official is sued in his or her official capacity for prospective injunctive relief. *Ex Parte Young*, 209 U.S. 123 (1908); *see also Hindes v. FDIC*, 137 F.3d 148, 165 (3d Cir. 1998). When a suit is filed against a state official in his official capacity, the only relief available is injunctive relief to prevent future violations of a protected right. *See Kentucky v.*

*Graham*, 473 U.S. 159, 167 n.14 (1985); *Will v. Michigan Dept. of State Police*, 491 U.S. 58, 71, n.10 (1989).

Here, Plaintiffs seek no injunctive relief (or any other relief for that matter) against Governor Wolf. The prayer for relief in the Complaint seeks to (1) prohibit enforcement of the signature requirements for the November 3, 2020 election; (2) require that Plaintiffs' candidates' nomination papers for the November 3, 2020 election be accepted without supporting signatures; and (3) require that Plaintiffs' candidates' names be placed on the November 3, 2020 general election ballot. Compl. at 26-27. Plaintiffs do not and cannot allege that Governor Wolf bears official responsibility for nomination papers or the general election ballot. To the contrary, they contend that Secretary of the Commonwealth Kathy Boockvar is the Commonwealth's Chief Election Official and is vested with statutory authority to determine the sufficiency of nomination papers submitted by political bodies. Compl. ¶ 22 (citing 25 P.S. § 2621(a), (d)).[9]

Because no injunctive relief is sought from Governor Wolf and the Complaint alleges no basis for awarding such relief, Governor Wolf is immune from suit under the Eleventh Amendment. He should be dismissed as a party.

---

[9] While Plaintiffs' Complaint references at length the Governor's executive orders, it does not seek to enjoin or limit enforcement of any of those orders. And, as detailed above, the stay-at-home restrictions were lifted for all counties in the Commonwealth as of June 5, 2020.

## II. Plaintiffs' Alleged Harm Is Speculative and, as a Result, There Is No Case or Controversy.

Pursuant to the February 1, 2018 Order of Court in *Constitution Party of Pa. v. Aichele*, the deadline for political bodies to file nomination papers is August 1. Compl., Ex. A, ¶ 1. Because August 1 falls on a Saturday, the deadline this year is Monday, August 3—a full eight weeks from now. Nonetheless, Plaintiffs propose that the stay-at-home orders, which have now been lifted, and related public health concerns make it "impossible" or "difficult if not practically impossible" for political body candidates to collect the required number of signatures and properly witness those signatures in advance of the August 3 deadline. Compl. ¶¶ 58, 71. This alleged harm is entirely speculative and therefore does not give rise to a "case or controversy."

Article III of the United States Constitution limits the power of the federal judiciary to "Cases" and "Controversies." U.S. Const. art. III, § 2. For a federal court to exercise jurisdiction under Article III, a plaintiff must allege and eventually prove that he has standing to pursue his claims. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992). The elements of Article III standing include: (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, (3) likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016). At the pleading stage, the plaintiff must "'clearly . .

. allege facts demonstrating' each element." *Id.* (quoting *Warth v. Seldin*, 422 U.S. 490, 518 (1975)). To establish an injury in fact, a plaintiff must show that he or she suffered "an invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560 (citations and internal quotation marks omitted). The imminence requirement means that "the injury is certainly impending." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990). Allegations of possible future injury do not satisfy this requirement. *Reilly*, 664 F.3d at 42-43.

The injury alleged here—a subjective, perceived inability to satisfy the August 3 deadline for collecting signatures—is speculative. As of May 14 when the Complaint was filed, stay-at-home restrictions had already been lifted for 24 counties in the Commonwealth. On May 15, another 13 counties were relieved of the stay-at-home restrictions. By the end of the following week, May 22, an additional 12 counties were relieved of the stay-at-home obligation and it was announced that 18 counties would go to the green phase on May 29. As of the date of this filing June 5, the stay-at-home order will have been lifted in ***all*** Pennsylvania counties and, in fact, 34 of the 67 counties are in the green phase of reopening as of June 5 and public gatherings of up to 250 people in those counties are permissible. There is a full eight weeks between June 5 and August 3 when

12

nomination papers are due. Moreover, there is not now, nor has there ever been, a prohibition on obtaining signatures.

It is speculative to suggest that Plaintiffs will be unable to meet the August 3 deadline. Plaintiffs' Complaint is wholly devoid of facts from which it can be inferred that injury is actual or imminent. They do not identify how many signatures were collected before the statewide emergency was declared, they do not allege whether their candidates tried and failed to obtain signatures while the stay-at-home restrictions were in place, they do not allege what efforts they made since the restrictions were lifted and they do not allege facts establishing that any future efforts will be futile. There is no factual basis to support a finding of imminent injury. Further, it is significant that the acts necessary to make out the projected injury are at least partially within the Plaintiffs' candidates' own control. They may not even solicit signatures. In circumstances like these, the courts have insisted on "a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all." *Lujan*, 504 U.S. at 565 n.2 (observing that "imminence" is "stretched beyond the breaking point when . . . the acts necessary to make the injury happen are at least partly within the plaintiff's own control").

Put simply, Plaintiffs should not be permitted to invoke federal jurisdiction to avoid having to meet a distant obligation that is within their own control.

Absent a "certainly impending" injury that is properly redressable by a favorable judicial decision, there is no case or controversy necessary for the exercise of federal jurisdiction.

### III. The Federal Court Order Establishing the Signature Requirement and Filing Deadline Is Not State Action.

The signature requirements that Plaintiffs seek to avoid are imposed by federal court order, not state law. The February 1, 2018 Order in *Constitution Party of Pa. v. Aichele*, imposes "rules . . . with respect to securing placement of [] candidates on the general election ballot in Pennsylvania" "[u]ntil such time as the Pennsylvania Legislature enacts a permanent measure amending or modifying the process to place . . . political bodies on the general election ballot and this change is signed by the Governor of Pennsylvania." Compl., Ex. A at p. 1. The February 1, 2018 Order establishes signature requirements for nomination papers for the various elective offices and the deadline by which the nomination papers must be submitted and "is intended to replace the signature requirement imposed by 25 P.S. § 2911(b)." *Id.* ¶ 4. It is these requirements which Plaintiffs are asking this Court to waive. Compl. at 26-27. The federal court order, however, is not state action, does not implicate the Fourteenth Amendment and cannot form the basis for a claim under 42 U.S.C. § 1983. *See District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973) ("actions of the Federal Government and its officers are . . . facially

exempt from [1983's] proscriptions"). And, to the extent Plaintiffs claim to be aggrieved by the February 1, 2018 Order, they can only seek relief from the Order in the context of that proceeding. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("until [the court of first instance's] decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected") (citations omitted). Plaintiffs cannot collaterally attack or seek to annul the February 1, 2018 requirements in this proceeding under 42 U.S.C. § 1983.

### IV.    **Plaintiffs Fail To Allege a Constitutional Violation.**

Even if Plaintiffs were able to overcome these threshold defects—and they cannot—their claims nonetheless fail because there was no constitutional violation.[10]

Ballot access claims are analyzed under the two-track approach derived from *Anderson v. Celebrezze*, 460 U.S. 780, 786-87 (1983), and *Burdick v. Takushi*, 504 U.S. 428 (1992). Specifically:

> When the right to vote and freedom to associate are
> subjected to severe restrictions, the regulation must
> be narrowly drawn to advance a state interest of

---

[10] As alternative relief, Plaintiffs seek to "modify Pennsylvania's in-person signature collection and witnessing requirements" based on their view that the system is antiquated and needs to be updated. Compl. ¶¶ 1, 61-62. This, of course, is not a remedy available through this litigation. Federal courts have no authority to dictate how states should conduct their elections. *See Clingman v. Beaver*, 544 U.S. 581, 586 (2005).

> compelling importance. But when a state election
> law provision imposes only reasonable,
> nondiscriminatory restrictions upon the First and
> Fourteenth Amendment rights of voters, the State's
> important regulatory interests are generally
> sufficient to justify the restrictions.

*The Constitution Party of Pa. v. Cortes*, 116 F. Supp. 3d 486, 500 (E.D. Pa. 2015)

(citations and internal quotation marks omitted), *aff'd*, 824 F.3d 386 (3d Cir.

2016). Here, the temporary stay-at-home restrictions imposed as a result of

COVID-19 are reasonable, nondiscriminatory and serve a critically important

government interest and therefore are sufficient to justify any resulting partial and

temporary limitation on in-person signature gathering.

The Pennsylvania Supreme Court rejected a challenge on Governor Wolf's

business closure order under the First and Fourteenth Amendments and held that

the closure order which was aimed at limiting the spread of COVID-19 did not

unconstitutionally interfere with a political candidate's right to assemble or violate

constitutional equal protection principles. *Friends of Danny DeVito v. Wolf*, No.

68 MM 2020, --- A.3d ---, 2020 WL 1847100 (Pa. Apr. 13, 2020), *petition for*

*certiorari filed*, No. 19-1265 (Apr. 27, 2020). The lead petitioner in *Friends of*

*Danny DeVito* was a candidate for state office who claimed that Governor Wolf's

executive order temporarily closing non-essential businesses infringed on his equal

protection rights by requiring the closing of his campaign office while the district

office of his incumbent opponent was permitted to remain open. *Id.* at *5. The Pennsylvania Supreme Court reasoned that the stay-at-home orders did not violate the First Amendment or Article 1, Sections 7 and 20 of the Pennsylvania Constitution because the executive orders did not "unreasonably limit[] alternative avenues of communication." *Id.* at *23. The Court explained:

> There is no question that the containment and suppression of COVID-19 and the sickness and death it causes is a substantial governmental interest. As to whether the Executive Order unreasonably limits alternative avenues of communication, it does not.
>
> The Executive Order does not place a restriction on supporters of DeVito Committee to assemble with each other and speak to each other, it only forecloses doing so in the physical campaign office. It does not in any respect limit the ability to speak or assemble, however, as it does not in any respect prohibit operations by telephone, video-conferencing, or on-line through websites and otherwise. In this era, cyberspace in general and social media in particular have become the lifeblood for the exercise of First Amendment rights. *See Packinghgam v. North Carolina*, 137 S. Ct. 1730, 1735 (2017).
>
> . . .
>
> The Executive Order is tailored to meet the exigencies of COVID-19 restricting in-person gatherings to promote social distancing. It does not otherwise prohibit alternative means of communication or virtual gathering.

*Id.* at *24. The Court also held that the executive order did not violate federal or state equal protection principles because it closed all non-essential businesses and did not advantage or disadvantage any candidate or campaign committee. *Id.* at *23. The petitioners in *Friends of Danny DeVito* sought an emergency stay of the closure order from United States Supreme Court. That request was denied. *Friends of Danny DeVito v. Wolf*, No. 19A1032, --- S. Ct. ---, 2020 WL 2177482 (May 6, 2020).[11]

There can be no doubt that the stay-at-home restrictions imposed by Governor Wolf were reasonable, non-discriminatory and served a substantial government interest. Any resulting burden on signature gathering was only partial and temporary. None of the executive orders prohibited signature gathering or made signature gathering impossible. Even before the pandemic affected Pennsylvania, the law in Pennsylvania was changed to relieve circulators of nomination papers of the obligation to swear an affidavit before a notary, *see* 25 P.S. § 2911, by eliminating a layer of physical interaction from the circulation

---

[11] Similarly, a California church applied to the United States Supreme Court for a temporary stay of California's 25% occupancy cap on religious worship services, arguing that the COVID-related restriction violated the First Amendment. The application was denied. *South Bay United Pentecostal Church v. Newsom*, No. 19A1044, --- U.S. ---, 2020 WL 2813056 (May 29, 2020). Chief Justice Roberts observed in concurring in the denial of the application for injunctive relief: "Our Constitution principally entrusts the safety and the health of the people to the politically accountable officials of the States to guard and protect. When those officials undertake to act in areas fraught with medical and scientific uncertainties, their latitude must be especially broad." *Id.* at *1 (Roberts, C.J., concurring).

process. This change went into effect on October 31, 2019. Moreover, Plaintiffs and other political bodies had 33 days[12] to collect signatures before the first stay-at-home order was issued on March 23 and will have 60 days to collect signatures after the last counties in the Commonwealth move from red to yellow on June 5. And, as the Court observed in *Friends of Danny DeVito*, even while the stay-at-home orders were in effect, virtual and other forms of campaigning were in no way restricted. 2020 WL 1847100 at *24.[13]

Because the Commonwealth had a substantial government interest in limiting the spread of COVID-19 by promoting social distancing and the stay-at-home orders did not severely burden or impede the right to associate, there was no violation of the First or Fourteenth Amendments. Nor have Plaintiffs alleged purposeful discrimination necessary to establish an equal protection violation. *See McClesky v. Kemp*, 481 U.S. 279, 292 (1987). Their Complaint should be dismissed for failure to state a claim.

---

[12] The first day for political bodies to circulate and file nomination papers was February 19, 2020. Compl. ¶ 32; *see also* 25 P.S. § 2913(b).

[13] This Pennsylvania election calendar is materially different than the calendars in other states, due in part to the February 1, 2018 Order, and therefore adjustments made in other states are not required or appropriate here. For example, the first stay-at-home order in Michigan went into effect on March 23, 2020 and continued through and after April 21, 2020 when signatures were due. *See Esshaki v. Whitmer*, No. 20-1336, 2020 WL 2185553 (6th Cir. May 5, 2020). In Illinois, the window for collecting signatures opened on March 24, 2020, four days after the stay at home order was issued and signatures are due on June 22, 2020. *Libertarian Party of Illinois v. Pritzker*, No. 20-CV-2112, 2020 WL 1951687 (N.D. Ill. Apr. 23, 2020).

## V.    Any Challenge to the Stay-at-Home Restriction Is Moot.

Even if Plaintiffs were otherwise able to make out a claim, any request for injunctive relief is moot.  A case becomes moot when (1) the alleged violation has ceased and there is no reasonable expectation that it will recur; and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.  *New Jersey Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 30 (3d Cir. 1985).  As public records confirm, the stay-at-home restrictions were lifted in all counties as of June 5.  Any challenge to the stay at home orders is therefore moot.

## CONCLUSION

For the reasons set forth above, the Complaint should be dismissed under

Rule 12(b)(1) for lack of jurisdiction or under Rule 12(b)(6) for failure to state a claim.

Respectfully submitted,

/s/ Daniel T. Brier
Daniel T. Brier
Donna A. Walsh
Richard L. Armezzani

Attorneys for Defendants, Governor Tom Wolf, Secretary of the Commonwealth of Pennsylvania Kathy Boockvar and Deputy Secretary for Elections and Commissions Johnathan M. Marks

Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Date: June 5, 2020

## CERTIFICATE OF SERVICE

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing

Memorandum of Law in Support of Motion To Dismiss was served upon the

following counsel of record via the Court's ECF system, on this 5th day of June

2020:

Drew Gray Miller, Esquire
Anderson & Labovitz, LLC
428 Forbes Avenue, Suite 1901
Pittsburgh, PA  15219

Mark R. Brown, Esquire
303 E. Broad Street
Columbus, OH  43215

Oliver B. Hall, Esquire
Center for Competitive Democracy
P.O. Box 21090
Washington, DC  20009

Clifford B. Levin, Esquire
Alex M. Lacey, Esquire
Dentons Cohen & Grigsby P.C.
625 Liberty Avenue
Pittsburgh, PA 15222-3152

/s/ Daniel T. Brier
Daniel T. Brier