UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

**LIBERTARIAN PARTY OF PENNSYLVANIA, et al.,**

**Plaintiffs,**

**v.**                                                                    **Case No. 5:20-cv-2299**

**TOM WOLF, in his official capacity as Governor
of Pennsylvania, et al.,**

**Defendants.**

## PLAINTIFFS' RESPONSE IN OPPOSITION TO PROPOSED INTERVENOR'S COMPLAINT

### Facts

The COVID-19 pandemic has given rise to an extraordinary set of circumstances in Pennsylvania and nationwide. In an effort to contain the virus and protect the public health, the Commonwealth of Pennsylvania has implemented several emergency measures that, although perhaps reasonable in light of the public health crisis, make it impossible for Plaintiffs and other citizens to comply with the statutory procedures they must follow to participate in Pennsylvania's electoral processes.

In particular, as voters, petition circulators, candidates and political bodies in Pennsylvania, Plaintiffs are required by law to obtain voters' signatures on nomination papers to qualify their respective candidates for placement on Pennsylvania's November 3, 2020 general election ballot. Under the emergency measures now in place, however, Plaintiffs cannot lawfully comply with these requirements. On March 6, 2020, Governor Wolf proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c). See "Proclamation of Disaster Emergency" (March 6, 2020), available at

1

https://www.governor.pa.gov/wpcontent/uploads/2020/03/20200306-COVID19-Digital-

Proclamation.pdf (accessed May 13, 2020).

Thereafter, Governor Wolf issued a number of executive orders that imposed sweeping restrictions on virtually every aspect of citizens' daily life and activities. By an order entered on March 19, 2020, which took effect on March 21, 2020, Governor Wolf required the closure of all "non-life sustaining businesses" – including "political" organizations – and provided for "enforcement actions" to be taken against businesses that fail to comply. See "Order of the Governor of Pennsylvania Regarding the Closure of All Businesses that are not Life Sustaining" (March 19, 2020).

On March 23, 2020, Governor Wolf issued a "stay at home" order effective until April 6, 2020, which required that "all individuals" residing in several counties across the Commonwealth "stay at home except as needed to access, support, or provide life sustaining business, emergency, or government services," and that individuals who leave their homes "must employ social distancing practices as defined by the Centers for Disease Control and Prevention."

The order further provided that "gatherings of individuals outside of the home are generally prohibited except as may be required to access, support or provide life sustaining services." See "Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home" (March 23, 2020).  Several subsequent orders applied the terms of the Governor's stay at home order to several more counties. Then, on April 1, 2020, Governor Wolf entered a statewide "stay at home" order, to remain in effect until April 30, 2020. See "Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home" (April 1, 2020).

On April 22, 2020, Governor Wolf instituted a process to "reopen Pennsylvania," to commence on May 8, 2020, pursuant to which each county in the Commonwealth would be designated as in a "red," "yellow" or "green" phase. Counties in red phase remain under the stay at home order until at least June 4, 2020; in yellow phase counties, the stay at home order is lifted but "large gatherings of more than 25" remain prohibited, indoor recreation, personal care facilities and all entertainment facilities must remain closed, and restaurants and bars are limited to carry-out only service.

Further, social distancing – maintaining at least six feet from other individuals – is required in yellow phase counties. To date, all counties in Pennsylvania are designated as red phase or yellow phase. Petitioning to qualify candidates and Political Bodies for Pennsylvania's November 3, 2020 general election ballot is not defined as an "essential" activity under Governor Wolf's stay at home orders. Moreover, even in yellow phase counties, mandatory social distancing means that collecting signatures by hand remains a prohibited activity.

Consequently, the public health emergency caused by COVID-19 and the various executive orders issued by Governor Wolf make it both unlawful and practically impossible to gather signatures for nomination papers throughout Pennsylvania. As the Governor's website cautions, law enforcement is authorized to enforce the Governor's orders, and "citations are possible for violators…." Given the severity of the COVID19 pandemic and its impact on Pennsylvania, it remains uncertain whether petitioning will become lawful during any part of the statutorily-mandated signature collection period prior to the August 3, 2020 deadline for Political Bodies to file nomination papers. And even if the legal prohibitions are lifted – including mandatory social distancing requirements – petitioning will remain a practical impossibility due

to the unacceptable risk to the public health posed by personal contact with large numbers of people during a pandemic.

On March 30, 2020 and March 31, 2020, respectively, Plaintiffs GPPA and LPPA sent Governor Wolf and Secretary Boockvar urgent written requests for relief from Pennsylvania's petitioning requirements as applied to them in the 2020 election cycle. (Verified Complaint Ex. B, Ex. C.) Plaintiff CPPA did the same on April 20, 2020. (Verified Complaint Ex. D.) Receiving no response, on April 29, 2020 Plaintiff LPPA sent Governor Wolf and Secretary Boockvar another letter reiterating its urgent request for relief, and Plaintiff GPPA did so on April 30, 2020. (Verified Complaint Ex. E, Ex. F.) On May 4, 2020 – five weeks after initially making their urgent requests – Plaintiffs LPPA and GPPA received a letter from Timothy Gates, Chief Counsel of the Governor's Office of General Counsel, advising that his office is "currently reviewing this matter," and that "we will be in touch soon." (Verified Complaint Ex. G.)

To date, Plaintiffs have received no further response from Defendants. Meanwhile, the clock is ticking and the August 3, 2020 deadline for Plaintiffs to file nomination papers rapidly approaches. Petitioning remains unlawful in Pennsylvania, and there is no reason to believe it will become legal – much less safe – anytime soon. Plaintiffs therefore urgently need the relief requested herein, to protect their speech, petitioning, voting, associational and equal protection rights as guaranteed by the First and Fourteenth Amendments. In the absence of such relief, Plaintiffs will suffer irreparable harm, because they are prohibited from petitioning and their respective candidates will be excluded from Pennsylvania's 2020 general election ballot.

On May 15, 2020, Plaintiffs filed this action. *See* Complaint, R.1. Almost two weeks later, on May 27, 2020, Proposed Intervenors sought to intervene. *See* Motion to Intervene, R.12. Proposed Intervenors, however, failed to include their proposed pleading with their

motion, making it difficult to assess their purported interest in the case, and whether Pennsylvania officials would adequately represent that interest.  The Court ordered Proposed Intervenors to file their required pleading by June 5, 2020, *see* Order, R.21, which Proposed Intervenors have now done.  *See* Proposed Answer, R.22.

### Argument

Federal Rule of Civil Procedure 24, which governs intervention, states, in relevant part:

(a) INTERVENTION OF RIGHT. On timely motion, the court must permit anyone to intervene who:
…

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

(b) PERMISSIVE INTERVENTION.

(1) *In General.* On timely motion, the court may permit anyone to intervene who:
…

(B) has a claim or defense that shares with the main action a common question of law or fact.
…

(3) *Delay or Prejudice.* In exercising its discretion, the court must consider whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights.

F. R. Civ. P. 24.

The proposed Intervenor claims it has a right under Rule 24(a) to intervene.  The Third Circuit has stated that "a non-party is permitted to intervene under Fed. R. Civ. P. 24(a)(2) only if:

(1) the application for intervention is timely; (2) the applicant has a sufficient interest in the litigation; (3) the interest may be affected or impaired, as a practical matter by the disposition of the action; and (4) the interest is not adequately represented by an existing party in the litigation.

Each of these requirements must be met to intervene as of right." *Mountain Top Condominium Ass'n v. Dave Staggert Master Builder, Inc.*, 72 F.3d 361, 365-66 (3d Cir. 1995) (citation omitted).  *See also Kleisser v. U.S. Forest Service*, 157 F.3d 964, 972 (3d Cir. 1998) ("adequacy of interest alone, however, is not enough to grant intervention.  Because Rule 24(a) envisions a separate inquiry into whether the government or other existing parties will adequately advocate the applicant's interest, courts must be careful not to blur the interest and representation factors together.").

## I.  Intervenor Has No Interest in Keeping Competitors Off the Ballot.

Intervenor has no standing under either federal or state law to complain about Pennsylvania's placement of competitors on its ballots. "[T]here is no constitutional right to keep competitors off the ballot and no general constitutional right to access courts …." Mark R. Brown, *Policing Ballot Access: Lessons From Nader's 2004 Run for President*, 35 CAP. U. L. REV. 165, 235 (2006). "This model, moreover, is the norm in other public rights settings. For example, crime victims have no standing to challenge prosecutors' decisions, either under state laws or under federal statutes." *Id*. at 235-36. As a simple competitor who wants to avoid competition, putative Intervenor's interest does not "relat[e] to the property or transaction that is the subject of the action," as is required by Rule 24(a), nor is the putative Intervenor "so situated that disposing of the action may as a practical matter impair or impede [its] ability to protect its interest."  Rule 24(a) simply does not apply here.

Numerous courts have rejected intervention by voters and ballot competitors under circumstances analogous to those presented here.  In *Goodall v. Williams*, 2018 WL 2008849 (D. Colo. 2018), for example, the Court recently ruled that Republican party agents challenging the ballot access of a competitor lack a sufficient interest to justify intervention as of right or

permissively.  There, a candidate (Lamborn) who had been excluded for non-compliance with Colorado's signature collection rules -- he had used a non-resident circulator -- sued in federal court to challenge Colorado's requirement that circulators be residents.  "[A] group of individuals" including those who had successfully challenged the candidate's signature collection efforts and had him removed from the ballot, a competitor, and even "an individual who alleges that he was misled into signing Congressman Lamborn's nominating petition," *id*. at *1, attempted to intervene in the federal litigation.

> They collectively asserted four interests to support intervention:
>
> (1) preserving Colorado's residency requirement; (2) preventing party raiding by ensuring that circulators of nominating petitions are registered with the same party as the candidate for whom they are circulating the petitions; (3) ensuring the honesty and integrity of the signature collection process; and (4) avoiding the uncertainty and difficulty in campaigning for office caused by Congressman Lamborn's delay in bringing this lawsuit.

*Id*. at *5.

The District Court rejected all four. The first was "too conclusory and generalized." *Id.* The second, party raiding, lacked any connection to the federal litigation: "the intervenors do not draw any connection between this requirement and the issue of party raiding." *Id*. The third, "'ensuring the honesty and integrity of circulators'," the Court found, "is a generalized concern shared by every participant in Colorado's electoral process." *Id*. at *6. Further, "the intervenors have not explained how their interest in ensuring the honesty and integrity of circulators could be impeded by the outcome of this lawsuit." *Id*.  It could therefore not support intervention.  The last interest, the Court concluded, while "sufficiently particularized," could not be shown to risk any threat; intervenors "failed to demonstrate that this interest could be impeded if Congressman Lamborn is included on the primary ballot." *Id*.  *See also Moore v. Johnson*,

2014 WL 2171097 (E.D. Mich. 2014) (rejecting intervention in almost-identical situation for same reasons).

The Court in *League of Women Voters of Virginia v. Virginia State Board of Elections*, 2020 WL 2090679 (W.D. Va., Apr. 30, 2020), recently catalogued the numerous cases rejecting voters' attempted interventions to assist elections officials under various circumstances. Like the Proposed Intervenor here, the intervenors in that case argued that intervention was allowed as a matter of course in election matters.  The Court disagreed after reviewing the seventeen cases cited by the putative intervenors, finding the cases either inapposite or contradicting the intervenors' position: "Those courts that have addressed intervention motions from similarly situated prospective intervenors bringing similar claims have regularly denied intervention as of right under Rule 24(a)." *Id.* at *4 (citing *Lee v. Va. Bd. of Elections*, 2015 WL 5178993, at *3 n.7 (E.D. Va. 2015); *One Wis. Inst., Inc. v. Nichol*, 310 F.R.D. 394, 397 (W.D. Wis. 2015); *United States v. Florida*, No. 4:12-cv-285, slip op. at 3 (N.D. Fla. Nov. 6, 2012); *Am. Ass'n of People with Disabilities v. Herrera*, 257 F.R.D. 236, 251 (D.N.M. 2008); *Am. Civil liberties Union of N.M. v. Santillanes*, 2006 WL 8444081, at *3 (D.N.M. 2006)). In likewise denying intervention, the Court added that "Courts are typically disinclined to allow intervenors who merely assert a 'generalized public policy interest shared by a substantial portion of the population.'"

Proposed Intervenor, for its part, cites four cases, *Pierce v. Allegheny County Bd. of Elections*, 324 F.Supp.2d 684 (W.D. Pa. 2003); *Stein v. Cortes*, 223 F.Supp.3d 423 (E.D. Pa. 2016); *Democratic Party of Georgia, Inc. v. Crittenden*, 347 F. Supp. 3d 1324 (N.D. Ga. 2018); and *Democratic Exec. Comm. of Florida v. Detzner*, 347 F. Supp. 3d 1017 (N.D. Fla. 2018), to support its claim that state political parties are commonly allowed to intervene to challenge competitors' access to the ballot. *See* Supplemental Brief in Support of Motion to Intervene,

R.18, at 8-9. Like the erroneous "wealth of authority" claim made in *League of Women Voters of Virginia*, none of the cases cited by Proposed Intervenor here supports its position.

Not one of the four cases cited by Proposed Intervenor involved ballot access; all four involved counting, collecting, or allowing votes.  *Pierce*, 324 F.Supp.2d 684, involved the delivery of absentee ballots; *Crittenden*, 347 F. Supp.3d 1324, involved counting absentee ballots; *Stein*, 223 F. Supp.3d 423, involved a vote recount; and *Detzner*, 347 F. Supp.3d 1017, addressed counting votes. Further, none of the cases involved any discussed opposition to intervention.  In *Pierce* it is not clear that intervention was opposed since the Court does not address any arguments made against or for it.  The same is true of *Detzner*, where there is no discussion of intervention other than to mention there is an intervening party. In *Stein* and *Crittenden*, meanwhile, intervention was not opposed at all. In sum, the proposed Intervenor here points to no case supporting its intervention to challenge a competitor's access to the ballot.

## II.   Pennsylvania Adequately Represents Intervenor's Asserted Interests.

Proposed Intervenor cannot demonstrate that the government will not and cannot adequately represent its asserted interests by fairly policing Pennsylvania's ballot access laws. The Supreme Court and the Third Circuit have both made clear that a putative intervenor must show that the existing parties cannot adequately represent its interests. *Trobovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972).  Where a shared interest, moreover, is being represented by government, this showing becomes even more demanding, as made clear by the Third Circuit in *Mountain Top Condominium Ass'n*, 72 F.3d at 368-69: "If his interest is identical to that of one of the present parties, or <u>if there is a party charged by law with representing his interest, then a compelling showing should be required to demonstrate why this representation is not adequate</u>." (Emphasis added and citation omitted).

"[A] presumption of adequate representation generally arises when the representative is a governmental body or officer charged by law with representing the interests of the absentee." *Commonwealth of Puerto Rico v. Rizzo*, 530 F.2d 501, 505 (3d Cir. 1976). This presumption is not easy to overcome, as demonstrated by *Hoots v. Commonwealth of Pennsylvania*, 672 F.2d 1133 (3d Cir. 1982), where the Court refused to allow a community association of homeowners to intervene as intervene as defendants in an action seeking injunctive relief against intentional racial segregation in drawing school district boundaries. The Court there found the school district's representation fully adequate to protect the property rights of the homeowners.

One noted authority reiterates the fact that "[t]here is a presumption that the government, when it is a litigant, will adequately represent the interests of the public generally." S. GENSLER, FEDERAL RULES OF CIVIL PROCEDURE: RULES AND COMMENTARY 524 (West 2014) (citations omitted). A putative intervenor "can overcome that presumption by showing that its interests are different from those of the public generally," *id*., but it "may not rely on theoretical conflicts," *id*. at 525, and "must point to specific interests that the government will not adequately represent." *Id*. (emphasis added and citations omitted).

Proposed Intervenor's Answer, R. 22, now makes clear that it is simply attempting to prevent Plaintiffs from gaining access to the ballot under conditions that must be adjusted because of the COVID-19 crisis. It seeks to usurp the role of government officials and take responsibility for enforcing Pennsylvania's ballot access laws.  This is an improper use of Rule 24 intervention and is a far cry from the required "compelling showing," *Mountain Top Condominium Ass'n*, 72 F.3d at 368-69, that Pennsylvania's representation is not adequate.

Proposed Intervenors cannot point to any "specific interests that the government will not adequately represent," *see* Gensler, *supra*, let alone make a "compelling showing." At best they

claim an interest in having Pennsylvania's ballot access laws honestly and fairly administered, but that is precisely what Pennsylvania's officials do. Proposed Intervenor's only differing interest that Pennsylvania will not and cannot constitutionally pursue is Proposed Intervenor's asserted[?] interest in keeping Plaintiffs off the ballot.  That, however, is not a proper, let alone legally recognized, interest.   Neither Proposed Intervenors nor Pennsylvania has a right or interest in excluding Plaintiffs from the ballot. The only proper, legitimate interest is properly administering constitutional ballot access laws -- something Pennsylvania officials are statutorily required to do.

Courts from other Circuits have rejected the very arguments Proposed Intervenor makes here.  In addition to finding that challengers have no interest in keeping a competitor off the ballot, the Court in *Goodall v. Williams*, 2018 WL 2008849 (D. Colo. 2018), also rejected the intervenor's claim that state officials inadequately represented their interests. "[T]he intervenors argue[d] that they 'are particularly focused on validating the associational rights of the Republican Party,' which 'requires different analysis and evidence'" *id.* at *7 (citation omitted), and would "present evidence beyond the scope of what the Secretary plans to introduce— namely, testimony regarding alleged misrepresentations made by circulators and the importance of maintaining party cohesion." *Id.* The Court rejected these arguments out-of-hand, and observed that "intervenors' arguments do not demonstrate inadequate representation so much as their desire to expand the scope of this lawsuit." *Id.*

In *League of United Latin Am. Citizens v. Wilson,* 131 F.3d 1297 (9th Cir. 1997), to cite another example, a foundation sought to intervene in a constitutional challenge to a ballot initiative enacted into law by popular referendum. Notwithstanding that the state's governor and attorney general were "vigorously and professionally" defending the initiative, *id.* at 1307, the

putative intervenor argued that they might be replaced because both were term-limited and not adequately defend the case in the future. The Ninth Circuit rejected this argument, holding that the foundation's mere "assertion that its interest might ... at some ... unspecified time in the future, diverge from the interest of the governor and attorney general is purely speculative, and does not justify intervention as a full-fledged party." *Id.* (citation omitted).

The Proposed Intervenor here cannot demonstrate that Pennsylvania officials any more than Colorado officials will not adequately represent the government's interests. At best the Proposed Intervenors simply seek to inject needless delay and superfluous arguments into the litigation.

**III.    Proposed Intervenor Waited Too Long.**

Further, the putative Intervenor here waited too long. "Whether intervention be claimed of right or as permissive, … the application must be 'timely.' If it is untimely, intervention must be denied." *NAACP v. New York*, 413 U.S. 345, 366 (1973). Time is of the essence in this case, as the Introduction to this Response demonstrates.  Meanwhile, the putative Intervenor here waited <u>two weeks</u> following Plaintiffs' filing of this emergency action to seek intervention. Even then, the putative Intervenor knowingly failed to submit a proposed pleading, in violation of Rule 24(c). *See* Fed. R. Civ. P. 24(c) ("The motion must state the grounds for intervention and be accompanied by a pleading that sets out the claim or defense for which intervention is sought."). The Third Circuit, like the Supreme Court, has made clear that intervention must be timely. *See Liberty Mutual Ins. Co. v. Treesdale, Inc*., 419 F.3d 216, 220 (3d Cir. 2005). "Timeliness is determined based on the totality of the circumstances," S. GENSLER, FEDERAL RULES OF CIVIL PROCEDURE: RULES AND COMMENTARY 516 (2014), with Courts focusing on four factors:

(1) how long the applicant had notice of the interest before it made the motion to intervene; (2) prejudice to existing parties resulting from any delay; (3) prejudice to the applicant if the motion is denied; and (4) any unusual circumstances militating for or against a finding of timeliness."

*Id*. (citations omitted).

Timeliness is extremely important in the context of elections, as demonstrated by the Supreme Court's holding in *NAACP v. New York*, 413 U.S. 345 (1973).   There, the Court sustained the lower court's refusal to allow intervention in a voting rights case to an association that waited three months after learning of the suit: "it was incumbent upon the appellants, at that stage of the proceedings, to take immediate affirmative steps to protect their interests." *Id*. at 366.

The putative Intervenor's two-week delay in moving to intervene, and its further delay in submitting a proposed pleading as required by Rule 24(c), threatens to prejudice Plaintiffs' ability to win the immediate, timely relief they seek.   Intervenor, in contrast, risks no harm or prejudice at all. It has no right nor protected interest in the matter. Plaintiffs' success or loss in the present case, moreover, will have no preclusive effect on the putative Intervenor should it seek to somehow complain to local elections officials. It therefore has no interest in avoiding an unfavorable precedent.   *See Bethune Plaza, Inc. v. Lumpkin*, 863 F.2d 525, 531-33 (7th Cir. 1988).

## IV.    Proposed Intervenor Should Not be Allowed to Intervene Permissively.

As for the Intervenor's attempt to intervene permissively under Rule 24(b), that too must fail -- for the same reasons described above.   In *Hoots v. Commonwealth of Pennsylvania*, 672 F.2d at 1136, the Third Circuit observed that denial of permissive intervention goes in lock-step with denial intervention as of right when interests are adequately represented:

where, as here, the interests of the applicant in every manner match those of an existing party and the party's representation is deemed adequate, the district court is well within

its discretion in deciding that the applicant's contributions to the proceedings would be superfluous and that any resulting delay would be "undue."

The Court in *Goodall v. Williams*, 2018 WL 2008849 (D. Colo. 2018), to use another example, after rejecting intervention as of right also rejected permissive intervention for the same reasons.  It instead informed the Republican party that it would entertain an amicus brief on its behalf.

Likewise, the Court in *League of Women Voters of Virginia v. Virginia State Board of Elections*, 2020 WL 2090679 (W.D. Va., Apr. 30, 2020), rejected permissive intervention after denying intervention as of right:

> The Court also has already emphasized that the interest the Prospective lntervenors purport is at stake in this case is one that is common to at least any Virginian who has registered to vote. The Court is not inclined to open the floodgates on this lawsuit to any voter in the state who would like to intervene.  Permitting the Prospective lntervenors to enter this litigation would risk converting this lawsuit into a public forum, clearly prejudicing the individual parties in this suit and causing needless complication and delay to their proceedings.

*Id*. at *6 (citations omitted).

Because the putative Intervenor here has no independent interest in policing Pennsylvania law, and because the government adequately represents that interest, the Court should exercise its discretion and deny intervention. *See* GENSLER, *supra*, at 525 ("The decision whether to allow permissive intervention lies within the discretion of the trial court.").

### Conclusion

Plaintiffs respectfully oppose the Motion to Intervene in this case.

*s/ Drew Gray Miller*

Drew Gray Miller, Esq. PA ID: 207830
Anderson & Labovitz, LLC
428 Forbes Ave., Suite 1901
Pittsburgh, PA 15219
Mobile: 412-760-3286
Fax: 412-291-1001
dmiller@PaLawFirm.com
*Counsel of Record*

*Attorney for Plaintiffs*


Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY
P.O. Box 21090
Washington, D.C. 20009
(202) 248-9294
oliverhall@competitivedemocracy.org

Mark R. Brown
303 East Broad Street
Columbus, OH 43215
(614) 236-6590
(614) 236-6956 (fax)
mbrown@law.capital.edu


*Attorneys for Plaintiffs*