**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

**LIBERTARIAN PARTY OF PENNSYLVANIA, et al.,**

**Plaintiffs,**

**v.** **Case No. 5:20-cv-2299**

**TOM WOLF, in his official capacity as Governor of Pennsylvania, et al.,**

**Defendants.**

**PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

**Facts**

The COVID-19 pandemic has given rise to an extraordinary set of circumstances in Pennsylvania and nationwide. In an effort to contain the virus and protect the public health, the Commonwealth of Pennsylvania has implemented several emergency measures that, although perhaps reasonable in light of the public health crisis, make it impossible for Plaintiffs and other citizens to comply with the statutory procedures they must follow to participate in Pennsylvania's electoral processes.

In particular, as voters, petition circulators, candidates and political bodies in Pennsylvania, Plaintiffs are required by law to obtain voters' signatures on nomination papers to qualify their respective candidates for placement on Pennsylvania's November 3, 2020 general election ballot. Under the emergency measures now in place, however, Plaintiffs cannot lawfully comply with these requirements. On March 6, 2020, Governor Wolf proclaimed the existence of a disaster emergency throughout the Commonwealth pursuant to 35 Pa. C.S. § 7301(c). See "Proclamation of Disaster Emergency" (March 6, 2020), available at

https://www.governor.pa.gov/wpcontent/uploads/2020/03/20200306-COVID19-Digital-Proclamation.pdf (accessed May 13, 2020).

Thereafter, Governor Wolf issued a number of executive orders that imposed sweeping restrictions on virtually every aspect of citizens' daily life and activities. By an order entered on March 19, 2020, which took effect on March 21, 2020, Governor Wolf required the closure of all "non-life sustaining businesses" – including "political" organizations – and provided for "enforcement actions" to be taken against businesses that fail to comply. See "Order of the Governor of Pennsylvania Regarding the Closure of All Businesses that are not Life Sustaining" (March 19, 2020).

On March 23, 2020, Governor Wolf issued a "stay at home" order effective until April 6, 2020, which required that "all individuals" residing in several counties across the Commonwealth "stay at home except as needed to access, support, or provide life sustaining business, emergency, or government services," and that individuals who leave their homes "must employ social distancing practices as defined by the Centers for Disease Control and Prevention."

The order further provided that "gatherings of individuals outside of the home are generally prohibited except as may be required to access, support or provide life sustaining services." See "Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home" (March 23, 2020). Several subsequent orders applied the terms of the Governor's stay at home order to several more counties. Then, on April 1, 2020, Governor Wolf entered a statewide "stay at home" order, to remain in effect until April 30, 2020. See "Order of the Governor of the Commonwealth of Pennsylvania for Individuals to Stay at Home" (April 1, 2020).

On April 22, 2020, Governor Wolf instituted a process to "reopen Pennsylvania," to commence on May 8, 2020, pursuant to which each county in the Commonwealth would be

designated as in a "red," "yellow" or "green" phase. Counties in red phase remain under the stay at home order until at least June 4, 2020; in yellow phase counties, the stay at home order is lifted but "large gatherings of more than 25" remain prohibited, indoor recreation, personal care facilities and all entertainment facilities must remain closed, and restaurants and bars are limited to carry-out only service.

Further, social distancing – maintaining at least six feet from other individuals – is required in yellow phase counties. As of May 19, 2020, when Plaintiffs filed their motion for preliminary relief (ECF No. 3), all counties in Pennsylvania were designated as red phase or yellow phase. At present, approximately half the counties in Pennsylvania – comprising 70.533 percent of the population – remain in yellow phase. (Dec. of D. Miller ¶ 6 (attached as Exhibit A).) Petitioning to qualify candidates and Political Bodies for Pennsylvania's November 3, 2020 general election ballot is not defined as an "essential" activity under Governor Wolf's stay at home orders. Moreover, even in yellow phase counties, mandatory social distancing means that collecting signatures by hand remains a prohibited activity.

Consequently, the public health emergency caused by COVID-19 and the various executive orders issued by Governor Wolf made it both unlawful and practically impossible to gather signatures for nomination papers throughout Pennsylvania from March 23, 2020 at least through May 19, 2020, and that remains true throughout half of Pennsylvania (comprising 70.533 percent of the population) to the present date. (Dec. of D. Miller.) As the Governor's website cautions, law enforcement is authorized to enforce the Governor's orders, and "citations are possible for violators…." Even in green phase counties, Pennsylvanians are instructed to practice social distancing by staying at home as much as possible, avoiding public spaces, avoiding large gatherings, and maintaining six feet of distance between other people. *See* Pennsylvania Dept. of

Health, *Help Stop the Spread*, available at https://www.health.pa.gov/topics/disease/coronavirus/Pages/Stop-the-Spread.aspx (accessed June 12, 2020).

Given the severity of the COVID-19 pandemic and its impact on Pennsylvania, it remains uncertain whether petitioning will become lawful or feasible during any part of the statutorily-mandated signature collection period prior to the August 3, 2020 deadline for Political Bodies to file nomination papers. And even if the legal prohibitions are eventually lifted throughout the state – including mandatory social distancing requirements – petitioning will remain a practical impossibility due to the unacceptable risk to the public health posed by personal contact with large numbers of people during a pandemic.

On March 30, 2020 and March 31, 2020, respectively, Plaintiffs GPPA and LPPA sent Governor Wolf and Secretary Boockvar urgent written requests for relief from Pennsylvania's petitioning requirements as applied to them in the 2020 election cycle. (Verified Complaint Ex. B, Ex. C.) Plaintiff CPPA did the same on April 20, 2020. (Verified Complaint Ex. D.) Receiving no response, on April 29, 2020 Plaintiff LPPA sent Governor Wolf and Secretary Boockvar another letter reiterating its urgent request for relief, and Plaintiff GPPA did so on April 30, 2020. (Verified Complaint Ex. E, Ex. F.) On May 4, 2020 – five weeks after initially making their urgent requests – Plaintiffs LPPA and GPPA received a letter from Timothy Gates, Chief Counsel of the Governor's Office of General Counsel, advising that his office is "currently reviewing this matter," and that "we will be in touch soon." (Verified Complaint Ex. G.)

To date, Plaintiffs have received no further response from Defendants. Meanwhile, the clock is ticking and the August 3, 2020 deadline for Plaintiffs to file nomination papers rapidly approaches. Petitioning remains unlawful in approximately half of Pennsylvania, where a large

majority of the population resides, and there is no reason to believe it will become legal – much less safe – anytime soon. Plaintiffs therefore urgently need the relief requested herein, to protect their speech, petitioning, voting, associational and equal protection rights as guaranteed by the First and Fourteenth Amendments. In the absence of such relief, Plaintiffs will suffer irreparable harm, because they are prohibited from petitioning and their respective candidates will be excluded from Pennsylvania's 2020 general election ballot.

On May 15, 2020, Plaintiffs filed this action. *See* Complaint, R.1. On June 5, 2020, Defendants tendered their Motion to Dismiss, R.23.

## Argument

### I. The Governor is Not Entitled to Eleventh Amendment Immunity.

Defendants assert that the Governor is entitled to Eleventh Amendment immunity. This is incorrect. The Governor is sued in his official capacity for prospective (injunctive) relief under § 1983 and the legal fiction created by *Ex parte Young*, 209 U.S. 123 (1908). "[A] person seeking purely prospective relief against state officials for ongoing violations of federal law may sue under the "legal fiction" of *Ex parte Young*, despite the text of the Eleventh Amendment." *Koslow v. Commonwealth of Pennsylvania*, 302 F.3d 161, 168 (3rd Cir. 2002) (citation omitted).

### II. There Exists a Live Case or Controversy Under Article III.

Defendants assert that there exists no case or controversy – that Plaintiffs' injury is "speculative" because Plaintiffs might miraculously make the deadline after all. Defendants are incorrect. As a threshold matter, Defendants disregard the uncontested fact that it has been both unlawful and practically impossible for Plaintiffs to engage in petitioning ever since Governor Wolf entered his Proclamation of Disaster in early March and followed it with several executive

orders that, taken together, ground civil society to a halt in Pennsylvania. Plaintiffs have alleged a concrete injury based on that fact alone, and they are entitled to relief from it.

To satisfy Article III, a plaintiff must "demonstrate that he has suffered 'injury in fact,' that the injury is 'fairly traceable' to the actions of the defendant, and that the injury will likely be redressed by a favorable decision." *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (citations omitted). Plaintiffs here satisfy this standard. They challenge the combination of Pennsylvania's ballot access requirements, the Governor's emergency orders, and the COVID-19 crisis as effectively prohibiting them from petitioning, which is the only procedure that Pennsylvania provides for them to qualify for the ballot, and thus threatening to preclude them from obtaining ballot access in 2020. The First Amendment requires that a workable procedure exist. None does. The Court can redress that violation with a favorable decision.

The past, present and ongoing harm that Plaintiffs allege here is always sufficient to support standing. For instance, in *Dearth v. Holder*, 641 F.3d 499, 502 (D.C. Cir. 2011), the plaintiff's inability to obtain a firearms permit constituted an "ongoing injury" sufficient to confer standing on him to challenge the constitutionality of the local law. The same is true here. Every day that Plaintiffs' right to petition is infringed by an unlawful and unworkable procedure adds to their ongoing injury.

Contrary to Defendants' assertion, in the face of the COVID-19 pandemic no Court has required that plaintiffs demonstrate to a certainty that they will be excluded from the ballot before recognizing their standing to seek relief from state petitioning requirements. Instead, Courts have repeatedly ordered relief under the precise same facts as presented here. Courts across the country have recognized that people simply cannot collect signatures in-person in a lawful or safe way during the COVID-19 crisis. They have therefore routinely and uniformly extended petitioning

relief to candidates in various forms, by reducing the numbers of signatures required, extending filing deadlines, and allowing remote or electronic petitioning, among other remedies. *See Libertarian Party of Illinois v. Pritzker*, 2020 WL 1951687 (N.D. Ill., Apr. 23, 2020); *Miller v. Thurston*, No. 5:20-cv-5070 (W.D. Ark., May 25, 2020); *Fair Maps Nevada v. Cegavske*, No. 3:20-cv-271 (D. Nev., May 29, 2020). More litigation continues to be filed each day in an effort to win relief from governors' orders prohibiting or infringing citizens' right to petition. *See*, *e.g*, *Alaska Libertarian Party v. Fenumiai*, No. 3:20-cv-127 (D. Ak., June 3, 2020); *Maryland Green Party v. Hogan*, 1:20-cv-1253 (D. Md., May 19, 2020).

Pennsylvania's laws and orders substantially threaten Plaintiffs' path to the ballot. This by itself is sufficient to support standing, as explained by the Supreme Court in *Susan B. Anthony List v. Driehaus*, 573 U.S. 149 (2014). There, the First Amendment challenge was to Ohio's false campaign speech law and enforcement by OEC. The Supreme Court observed that the challengers "have alleged 'an intention to engage in a course of conduct arguably affected with a constitutional interest.'" *Id*. at 161 (citation omitted). Next, their "intended future conduct is 'arguably ... proscribed by [the] statute' they wish to challenge. *Id*. at 162 (citation omitted). It therefore followed that "[a]s long as [they] continue to engage in comparable electoral speech …, that speech will remain arguably proscribed by Ohio's false statement statute," *id*. at 163, and that "the threat of future enforcement of the false statement statute is substantial." *Id*. at 164. In addition, "there is a history of past enforcement here …." *Id*. at 164. The challengers thus possessed standing to press their pre-enforcement claim.

Plaintiffs' challenge satisfies Article III for the same reasons. Indeed, it is an a fortiori case, since Pennsylvania's laws and orders do not merely threaten Plaintiffs' First Amendment rights, they are presently impeding their exercise. That Plaintiffs might somehow, some way still achieve

ballot access is irrelevant for purposes of Article III standing. The question is whether Pennsylvania's laws and order substantially threaten Plaintiffs' ability to do so. There is no doubt about that in the present case, since they are presently interfering with Plaintiffs' ability to access the ballot.

**III. Plaintiffs Have Properly Alleged a Violation of Their First and Fourteenth Amendment Rights.**

Defendants assert that Plaintiffs have failed to allege a constitutional violation. In support, they cite *Friends of Danny DeVito v. Wolf*, 2020 WL 1847100 (Pa., Apr. 13, 2020), which ruled that the Governor has authority under Pennsylvania law to issue his emergency orders closing non-essential businesses and upholding the enforcement of this restriction against a candidate's campaign headquarters. That case hardly supports Defendants' assertion that Plaintiffs do not have a right to engage in petitioning to qualify for Pennsylvania's general election ballot. It says no such thing, nor could it. If it did, then it would mean that the Governor has the authority to simply terminate democracy and make himself a dictator. The thought is specious.

As Plaintiffs have explained, for much of the statutorily prescribed petitioning period, Plaintiffs had no lawful procedure by which they may qualify their candidates for Pennsylvania's November 3, 2020 general election ballot. Under Pennsylvania law, Plaintiffs are required to obtain signatures on nomination papers to qualify for the ballot, yet the Governor's orders prohibited them from engaging in petitioning. That remains true throughout half the Commonwealth, where the large majority of Pennsylvanians reside.

Based on these facts alone, Plaintiffs have alleged a violation of their First Amendment rights. "Petition circulation … is 'core political speech,' because it involves 'interactive communication concerning political change.'" *Buckley v. American Constitutional Law Foundation, Inc.*, 525 U.S. 182, 186 (1999) (quoting Meyer v. Grant, 486 U.S. 414, 422 (1988)).

First Amendment protection is therefore "at its zenith" with respect to Plaintiffs' right to circulate petitions in support of their respective candidates. *Id.* Consequently, each day that Pennsylvania law prohibits Plaintiffs from engaging in petitioning, or infringes their right to do so, causes irreparable harm to Plaintiffs' core First Amendment rights. *See Buckley*, 525 U.S. at 186; *Elrod v. Burns*, 427 U.S. 347, 373 (1976) ("the loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury").

Plaintiffs will suffer further injury to their First Amendment rights in the absence of relief because their candidates will be excluded from Pennsylvania's November 3, 2020 general election ballot. "One of the most basic goals of a political organization … is to have its candidates listed on the general election ballot." *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 351 (3rd Cir. 2014). Consequently, a statutory scheme that prevents or threatens to prevent a political party from doing so infringes upon "a fundamental First Amendment right to political participation — not an inconvenience or burden, but wholesale disenfranchisement." *Id.* at 364 n.21.

The exclusion of Plaintiffs' candidates from Pennsylvania's November 3, 2020 general election ballot will cause still further injury to Plaintiffs' voting and associational rights. As the Seventh Circuit has explained (citing Supreme Court precedent):

> the impact of candidate eligibility requirements on voters implicates basic constitutional rights. The exclusion of candidates . . . burdens voters' freedom of association, because an election campaign is an effective platform for the expression of views on the issues of the day, and a candidate serves as a rallying point for like-minded citizens. Also, because voters can assert their preferences only through candidates or parties or both, . . . the right to vote is heavily burdened if that vote may be cast only for major-party candidates at a time when other parties or other candidates are clamoring for a place on the ballot.

*Lee v. Keith*, 463 F.3d 763, 768 (7th Cir. 2006) (citations, quotation marks and brackets omitted).

Accordingly, Plaintiffs have properly alleged a violation of their petitioning, associational, speech and voting rights, all of which are protected by the First Amendment.

Defendants assert in passing that Plaintiffs have failed to allege the "purposeful discrimination necessary to establish an equal protection violation." (Def. Mot. to Dismiss (ECF No. 23-2) at 19 (citing *McClesky v. Kemp*, 481 U.S. 279, 292 (1987).) Defendants are incorrect. *Mclesky* involved a criminal defendant's claim that Georgia's capital punishment statute violated the Equal Protection Clause. *See McClesky*, 481 U.S. at 291. The Court's analysis thus relied on the "basic principle" that a "criminal defendant" who alleges an equal protection violation in the sentencing context must prove "the existence of purposeful discrimination," and that "the purposeful discrimination had a discriminatory effect on him." *Id.* at 292 (citations and quotation marks omitted). But this is not a criminal case and the "basic principle" the Court relied upon in *McClesky* has no application here.

The Third Circuit has expressly concluded that "the *Anderson* test is the proper method for analyzing" equal protection claims asserted in ballot access cases. *Rogers v. Corbett*, 468 F.3d 188, 193 (3rd Cir. 2006) (citing *Anderson v. Celebrezze*, 460 U.S. 780 (1983)). *Anderson* does not require an allegation of "purposeful discrimination" to allege a violation of the Equal Protection Clause. *See Anderson*, 460 U.S. at 789 (explaining the "analytical process" by which courts must review the constitutionality of election laws). Consequently, Defendants' reliance on *McClesky* is misplaced.

Plaintiffs properly allege that Pennsylvania law violates their right to equal protection on the ground that it guarantees ballot access to major party nominees by virtue of a taxpayer-funded primary election procedure, while failing to provide Plaintiffs with a lawful procedure by which they may qualify for the ballot. Pennsylvania law therefore imposes an unequal burden on Plaintiffs. Plaintiffs thus state a claim for the violation of their right to equal protection.

## IV. The Governor Is Not Entitled to Dismissal Based on His Amended Orders.

Defendants claim that the Governor should now be dismissed because his emergency orders have all been lifted. Defendants are factually and legally incorrect for a number of reasons.

First, as a factual matter, the Governor's emergencies restrictions have not been completely lifted, even for counties that are now in the Green Phase. Consequently, the Governor is responsible for the lost signature collection time experienced by Plaintiffs and his continuing orders remain responsible for Plaintiffs' irreparable injuries. As late as June 5, 2020, the Governor stated on his official web page: "As the situation stabilizes, we are planning a measured and strategic approach to allowing Pennsylvanians to return to work safely to prevent a resurgence of the virus." Governor Tom Wolf, Process to Reopen Pennsylvania, June 5, 2020.[1] "Pennsylvania plans to proceed with returning to work cautiously," he added. *Id*. "Broad reopenings or reopenings that are not structured around ongoing social distancing, universal masking, or other public health guidance would likely result in a spike of cases and new stay-at-home and closure orders." *Id*.

Moreover, the fact remains that half the counties in Pennsylvania, comprising 70.533 percent of the population, are designated as yellow phase. Thus, Plaintiffs are prohibited from engaging in petitioning to solicit signatures from a large majority of the Commonwealth's population. And even in counties designated as green phase, many restrictions remain in place. As the Governor explained on June 5, 2020, "this phase will facilitate a return to a 'new normal,' [and] it will be equally important to continue to monitor public health indicators and adjust orders and restrictions as necessary to ensure the spread of disease remains at a minimum." *Id*. There will be no return under the Governor's orders to the old normal. Remaining restrictions under the green

---

[1] https://www.governor.pa.gov/process-to-reopen-pennsylvania/.

phase include prohibiting gatherings of more than 250 people, limiting restaurants and bars to 50% capacities, restricting shopping malls and other indoor places to 50% capacities, and encouraging people to stay home, avoid large public gatherings, and to practice social distancing by maintaining six feet of distance from other people. *Id*.

Second, the Governor's past and present emergency orders are "entwined" with Pennsylvania's ballot access laws and in combination with those ballot access laws have placed a severe burden on Plaintiffs' First Amendment rights. As the Supreme Court stated in *Brentwood Academy v. Tennessee Secondary State Athletic Association*, 531 U.S. 288, 298 (2001), "the pervasive entwinement of public institutions and public officials in its composition and workings … [means] there is no substantial reason to claim unfairness in applying constitutional standards to it." Even private actors that are "controlled by the state, perform[] a function delegated by the state, or [are] entwined with government policies or management," *Leshko v. Servis*, 423 F.3d 337, 340 (3d Cir. 2005), are subject to suit under the Constitution and 42 U.S.C. § 1983. The same is necessarily true for government officials who are entwined with government policies and their management, as here.

Third, as Defendants concede, the Governor had the authority under Pennsylvania law to put these emergency orders in place. *Friends of Danny DeVito v. Wolf*, 2020 WL 1847100 (Pa., Apr. 13, 2020) (holding that Governor had authority to issue emergency orders). He therefore has the authority under Pennsylvania law to alter them and to ameliorate the burdens they have caused to Plaintiffs' First Amendment rights. The Governor therefore remains a proper defendant in this matter to ensure that appropriate relief may be awarded to redress Plaintiffs' irreparable injury.

Fourth, Plaintiffs continue to suffer irreparable harm because of the Governor's emergency orders and Pennsylvania's ballot access laws. Even assuming that all eventually returns to pre-

pandemic normal, Plaintiffs still lost months of circulating time during the most important and productive part of the statutory petitioning period. This loss severely burdens and irreparably damages their First Amendment rights.

Fifth, even were the Governor's orders someday completely lifted, Pennsylvania returned to the pre-pandemic status quo, and Plaintiffs were left without any continuing burden on their First Amendment rights, this would still not defeat Plaintiffs' suit against the Governor. "It is well settled that 'a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice.'" *Friends of the Earth, Inc. v. Laidlaw Environmental Services*, 528 U.S. 167, 189 (2000) (citation omitted). Only where "subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *id*. (citation omitted), will a case be dismissed. The defendants, meanwhile, are under a "'heavy burden of persua[ding]' the court that the challenged conduct cannot reasonably be expected to start up again …." *Id*. *See also United States v. Government of the Virgin Islands*, 363 F.3d 276, 285 (3d Cir. 2004) (same); *Diamond v. Pennsylvania State Educational Ass'n*, 399 F. Supp.3d 361, 385 (W.D. Pa. 2019) (same).

Here, as the Governor concedes on his June 5, 2020 web page, nothing is certain. Even assuming that the Commonwealth may someday return to the pre-pandemic normal – which it has yet to do – there can be no guarantee that the Governor will not once again have to implement emergency orders over the course of the summer. Consequently, the Governor cannot meet his "heavy burden" of persuading the Court that his orders "cannot reasonably be expected to start up again."

**V. Plaintiffs' Injury Was Not Caused By this Court.**

Defendants assert that there is no state action in this case because the number of signatures now required under Pennsylvania law was modified by this Court. Defendants ignore, however, the fact that it is Pennsylvania law that requires signatures in the first instance, it is the Governor who has put in place emergency shelter orders, and most important it is Pennsylvania law that sets the deadline and dictates how those signatures are collected. Plaintiffs' challenge in this case is that the combination of these statutory requirements, together with the COVID-19 crisis, makes it virtually impossible for Plaintiffs to obtain ballot access. That this Court previously granted Plaintiffs relief from the unconstitutional application of Pennsylvania law did not cause Plaintiffs' injury here; rather the combination of the COVID-19 crisis, the Governor's orders, and Defendants' continued enforcement of the challenged statutory provisions did.

Even assuming that this Court's prior order lowering Pennsylvania's signature requirement were a factor in this case, it would not absolve Pennsylvania officials of responsibility under the First Amendment and § 1983 for their own actions. "It is certainly true that federal oversight of a state-administered federal program will not automatically preclude a finding that a state employee acted under color of state law." *Rosas v. Brock*, 826 F.2d 1004, 1007 (11th Cir. 1987). Only "[w]here the challenged action by state employees is nothing more than application of federal rules" will the "the federal involvement [be deemed] so pervasive that the actions are taken under color of federal and not state law." *Id*. *See also Martin v. Heckler*, 773 F.2d 1145, 1154 (11th Cir. 1985) (same); *Crayton v. Shalala*, 1995 WL 605599, *6 (N.D. Ala. 1995) (same).

The question of which predominates where both federal and state rules are at play in a given situation "depends upon the authority under which the action that causes the constitutional harm is taken." *Jarno v. Lewis*, 256 F. Supp.2d 499, 506 (E.D. Va. 2003). "When the violation is the joint product of the exercise of a State power and of a non-State power then the test under the

Fourteenth Amendment and § 1983 is whether the state or its officials played a 'significant' role in the result." *Kletschka v. Driver*, 411 F.2d 436, 448 (2d Cir. 1969).

Here there can be no doubt that Defendants have played a "significant role in the result." Defendants continue to enforce the challenged statutory provisions, which require that Plaintiffs obtain signatures by hand on nomination papers and file them by the August 3, 2020 deadline. Further, the Governor has issued emergency shelter orders that prohibit Plaintiffs from engaging in petitioning or substantially infringe Plaintiffs' right to do so, thus making it practically impossible for Plaintiffs to qualify for the ballot, notwithstanding the relief that this Court previously granted. That this Court granted such relief cannot relieve Defendants of their responsibility now. They are still acting under color of Pennsylvania law and causing irreparable injury to Plaintiffs.

**Conclusion**

Defendants' Motion to Dismiss should be **DENIED**.

Respectfully submitted,

*s/ Drew Gray Miller*

Drew Gray Miller, Esq. PA ID: 207830
Anderson & Labovitz, LLC
428 Forbes Ave., Suite 1901
Pittsburgh, PA 15219
Mobile: 412-760-3286
Fax: 412-291-1001
dmiller@PaLawFirm.com
*Counsel of Record*

Oliver B. Hall
CENTER FOR COMPETITIVE DEMOCRACY

Mark R. Brown
303 East Broad Street

P.O. Box 21090
Washington, D.C. 20009
(202) 248-9294
oliverhall@competitivedemocracy.org

Columbus, OH 43215
(614) 236-6590
(614) 236-6956 (fax)
mbrown@law.capital.edu

*Attorneys for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that on June 12, 2020, I filed the foregoing document through the Court's CM/ECF system, which will effect service upon all counsel of record.

/s/Drew Miller
Drew Miller