## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LIBERTARIAN PARTY OF PENNSYLVANIA; THE CONSTITUTION PARTY OF PENNSYLVANIA; GREEN PARTY OF PENNSYLVANIA; STEVE SCHEETZ; KEVIN GAUGHEN; ALAN SMITH; TIMOTHY RUNKLE; BOB GOODRICH: and JUSTIN MAGILL, | : | |
| Plaintiffs, | : | |
| v. | : | NO. 20-CV-02299 |
| | : | |
| TOM WOLF, in his official capacity as Governor of the Commonwealth of Pennsylvania; KATHY BOOCKVAR, in her official capacity as Secretary of the Commonwealth of Pennsylvania; and JONATHAN M. MARKS, in his official capacity as Deputy Secretary for Elections and Commissions, | : | JUDGE SMITH<br><br>ELECTRONICALLY FILED |
| Defendants. | : | |

## DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Daniel T. Brier
Donna A. Walsh
Richard L. Armezzani
Myers, Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503

Attorneys for Defendants

# **TABLE OF CONTENTS**

INTRODUCTION ................................................................................... 1

FACTUAL BACKGROUND AND PROCEDURAL HISTORY ........................... 2

ARGUMENT ........................................................................................ 7

    A.    Plaintiffs Have Not Established a Reasonable Probability of Success ........................................................................................ 8

    B.    Plaintiffs Have Not Demonstrated Irreparable Harm ........................ 15

    C.    Granting Preliminary Injunctive Relief Would Be Contrary to the Public Interest and the Interests of Other Interested Parties .............. 16

    D.    The Balance of Equities Favors Defendants ........................................ 17

    E.    There Is No Basis To Waive the Bond Requirement ......................... 18

CONCLUSION ..................................................................................... 19

# TABLE OF AUTHORITIES

## CASES

*Abbott v. Perez*, ___ U.S. ___, 138 S. Ct. 2305 (2018) .......................................... 16

*Acosta v. Wolf*, No. 20-2528, 2020 WL 3077098 (E.D. Pa. June 10, 2020).......... 11

*Am. Tel. & Tel Co. v. Winback & Conserve Program, Inc.*, 42 F.3d 1421
    (3d Cir. 1994) ................................................................................. 7

*Baldwin v. Cortes*, 378 F. App'x 135 (3d Cir. 2010)................................................ 6

*Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176
    (3d Cir. 2008) ................................................................................. 8

*Celotex Corp. v. Edwards*, 514 U.S. 300 (1995)...................................................... 14

*City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41 (1986)............................... 13

*Clapper v. Amnesty Int'l USA*, 568 U.S. 398 (2013) .............................................. 13

*Clements v. Fashing*, 457 U.S. 957 (1982) ........................................................ 12, 17

*Clingman v. Beaver*, 544 U.S. 581 (2005) ....................................................... 2, 9, 10

*Constitution Party of Pa. v. Cortes*, 824 F.3d 386 (3d Cir. 2016)....................... 5, 9

*District of Columbia v. Carter*, 409 U.S. 418 (1973) ............................................ 14

*Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146 (3d Cir. 1999)............................ 13

*ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223 (3d Cir. 1987) ...................................... 15

*Esshaki v. Whitmer*, No. 20-1336, 2020 WL 2185553 (6th Cir. May 5,
    2020)...................................................................................... 10, 15

*Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100
    (3d Cir. 1988) ................................................................................. 18

*Friends of Danny DeVito v. Wolf*, No. 68 MM 2020, --- A.3d ---, 2020
WL 1847100 (Pa. Apr. 13, 2020), *petition for certiorari filed*, No.
19-1265 (Apr. 27, 2020) ..................................................................... 12

*Garbett v. Herbert*, ---F. Supp. 3d ---, 2020 WL 2064101 (D. Utah. Apr.
29, 2020), *appeal filed*, No. 20-4051 (10th Cir. May 1, 2020) .......................... 15

*Gottlieb v. Lamont*, --- F. Supp. 3d ---, No. 20-CV-0623, 2020 WL 3046205
(D. Conn. June 8, 2020) .......................................................... 1, 11, 12

*Jenness v. Fortson*, 403 U.S. 431 (1971) .................................................. 11, 12, 17

*John Doe No. 1 v. Reed*, 561 U.S. 186 (2010) ........................................................ 17

*Kamdem-Ouaffo v. Task Mgmt., Inc.*, 792 F. App'x 218 (3d Cir. 2019) ............... 15

*Libertarian Party of Illinois v. Pritzker*, No. 20-CV-2112, 2020 WL 1951687
(N.D. Ill. Apr. 23, 2020) ....................................................................... 15

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ............................................. 13

*Mathews v. Eldridge*, 424 U.S. 319 (1976) ............................................................. 13

*McCarthy v. Briscoe*, 429 U.S. 1317 (1976) ............................................................. 9

*Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171 (6th Cir. 1995) ................. 18

*Purcell v. Gonzalez*, 549 U.S. 1 (2006) .................................................................... 16

*Republican Nat'l Comm. v. Democratic Nat'l Comm.*, ___ U.S. ___, 140
S. Ct. 1205 (2020) ................................................................................... 16

*Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396 (E.D. Pa. 2016) .............. 16

*Reilly v. Ceridian Corp.*, 664 F.3d 38 (3d Cir. 2011) ............................................. 13

*Reilly v. City of Harrisburg*, 858 F.3d 173 (3d Cir. 2017) ........................................ 7

*Rogers v. Corbett*, 468 F.3d 188 (3d Cir. 2006) ................................ 1, 10, 11, 12, 17

*Stein v. Cortes*, 223 F. Supp. 3d 423 (E.D. Pa. 2016) ................................................ 8

*Storer v. Brown*, 415 U.S. 724 (3d Cir. 1974) .................................................... 1, 11

*Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320 (1961) .................................. 3

*The Constitution Party of Pa. v. Cortes*, 116 F. Supp. 3d 486 (E.D. Pa. 2015) ..... 10

*Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020) ........................ 1, 10, 11, 12, 14

*Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131
    (3d Cir. 2013) ..................................................................................... 13

*Williams v. Rhodes*, 89 S. Ct. 6 (1968) ................................................................... 9

*Zambelli v. Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412 (3d Cir. 2010) ......... 18

## STATUTES

42 U.S.C. § 1983 ..............................................................................2, 6, 14

35 Pa.C.S. § 7301(c) ............................................................................... 2

25 P.S. § 2911.......................................................................................... 5

25 P.S. § 2911(b) ................................................................................. 5, 6

25 P.S. § 2913(b) ..................................................................................... 6

25 P.S. § 2937........................................................................................ 5, 6

Fed. R. Civ. P. 65(c)................................................................................ 18

Fed. R. Evid. 201 ..................................................................................... 3

## INTRODUCTION

With nearly two months left to go before nomination papers are due to be filed, Plaintiffs seek a mandatory preliminary injunction relieving them of *any* obligation to collect signatures and directing that their candidates be placed on the ballot *automatically* based on a naked assertion that it is "difficult if not practically impossible to collect signatures" due to the COVID-19 pandemic. This unsupported assertion falls far short of the exacting showing required to justify issuance of a mandatory preliminary injunction. Signature requirements like those at issue here have been regularly upheld by the courts[1] and, notwithstanding the COVID-19 pandemic, courts have refused to relieve candidates in other states of higher signature requirements in less time.[2] Further, there is no authority for the relief that Plaintiffs seek. Federal courts lack authority to dictate to the states how

---

[1] *See, e.g., Storer v. Brown*, 415 U.S. 724, 740 (1974) ("Standing alone, gathering 325,000 signatures in 24 days would not appear to be an impossible burden."); *Rogers v. Corbett*, 468 F.3d 188, 195 (3d Cir. 2006) (gathering 67,070 signatures in 21 weeks not "unconstitutionally burdensome").

[2] *See, e.g., Thompson v. Dewine*, 959 F.3d 804 (6th Cir. 2020) (granting motion to stay preliminary injunction because plaintiffs were unlikely to prevail on merits of claim that five-week period to obtain "hundreds of thousands of signatures" was unconstitutional burden and explaining that "five-week period from Ohio's rescinding of its [stay-at-home] order until the deadline to submit an initiative petition undermines Plaintiffs' argument that the State has excluded them from the ballot"); *Gottlieb v. Lamont*, --- F. Supp. 3d ---, No. 20-CV-0623, 2020 WL 3046205 (D. Conn. June 8, 2020) (denying preliminary injunction because plaintiffs were not likely to prevail on merits of challenge to signature requirement that they obtain more than 1000 signatures in 16 days and explaining that signature requirement was "reasonable and non-discriminatory and do[es] not unconstitutionally burden plaintiffs' rights").

they should conduct their elections.[3]  On top of all that, Plaintiffs' claims are defective not only because they lack standing and they fail to assert a basis for injunctive relief under 42 U.S.C. § 1983, but also because the signature requirement derives from a federal court order.  Plaintiffs' motion fails in all material respects and should be denied.

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This action stems from the unprecedented COVID-19 pandemic and the various restrictions imposed to slow the spread of the virus.  Governor Tom Wolf proclaimed the existence of a disaster emergency throughout the Commonwealth on March 6, 2020 pursuant to 35 Pa.C.S. § 7301(c).  On March 19, 2020, Governor Wolf issued an order temporarily closing non-life-sustaining businesses to prevent the spread of the virus.  On March 23, 2020, Governor Wolf issued a stay-at-home order for individuals residing in seven Pennsylvania counties.  By various orders issued between March 24, 2020 and March 31, 2020, Governor Wolf extended the stay-at-home restriction to 26 additional counties.  On April 1, 2020, Governor Wolf issued a statewide stay-at-home order effective until April 30, 2020.  Neither the disaster emergency declaration nor the stay-at-home orders prohibited campaigning or signature-gathering.

---

[3] *See Clingman v. Beaver*, 544 U.S. 581, 586 (2005).

On April 22, 2020, Governor Wolf implemented a process to "reopen Pennsylvania" with a targeted May 8, 2020 start date. The reopening plan involved progressively classifying counties for reopening from red to yellow to green phases. The red phase maintained the stay-at-home restriction. The yellow phase lifts the stay-at-home restriction and allows gatherings of up to 25 people. The green phase lifts many of the other restrictions and allows gatherings of up to 250 people.[4]

The stay-at-home restrictions started to be lifted as planned on May 8, 2020. Twenty-four counties moved into the yellow phase on May 8,[5] another 13 moved to yellow beginning May 15,[6] and 12 more counties moved to the yellow phase on

---

[4] *See* Process to Reopen Pennsylvania, https://www.governor.pa.gov/process-to-reopen-pennsylvania/ (last visited June 12, 2020). The Court may properly take judicial notice of the Governor's Orders and the other government publications cited herein pursuant to Rule 201 of the Federal Rules of Evidence. *See Tampa Elec. Co. v. Nashville Coal Co.*, 365 U.S. 320, 332 & n.10 (1961) (taking judicial notice of government publication).

[5] *See* Order of the Governor of the Commonwealth of Pennsylvania for Limited Opening of Businesses. Lifting of Stay At Home Requirements, and Continued Aggressive Mitigation Efforts, https://www.governor.pa.gov/wp-content/uploads/2020/05/20200507-TWW-Yellow-Phase-Order.pdf (last visited June 12, 2020).

[6] *See* Amendment to Order of the Governor of the Commonwealth of Pennsylvania for Limited Opening of Businesses. Lifting of Stay At Home Requirements, and Continued Aggressive Mitigation Efforts, https://www.governor.pa.gov/wp-content/uploads/2020/05/20200514-TWW-amendment-to-yellow-phase-order.pdf (last visited June 12, 2020).

May 22.[7]  On May 29, 18 counties moved to the green phase.[8]  As of June 5, all 67

counties in Pennsylvania were either in the yellow (33 counties) or green (34

counties) phase of reopening.[9]  On June 12, an additional 12 counties moved to

green, bringing the total number of counties in green to 46 of the 67.[10]

On May 14, 2020, in the midst of the reopening plan, Plaintiffs initiated this

action under 42 U.S.C. § 1983 requesting that their candidates be relieved of any

obligation to collect signatures and that they be placed automatically on the general

election ballot.  The Plaintiff organizations are "political bodies."  They do not

participate in primaries but rather circulate nomination papers and obtain

---

[7]  *See* Amendment to the Order of the Governor of the Commonwealth of Pennsylvania For Limited Opening of Businesses, Lifting of Stay At Home Requirements, And Continued Aggressive Mitigation Efforts, https://www.governor.pa.gov/wp-content/uploads/2020/05/20200521-TWW-Yellow-Phase-Order-Amendment.pdf (last visited June 12, 2020).

[8]  *See* Order of the Governor of the Commonwealth of Pennsylvania For the Continued Reopening of the Commonwealth, https://www.governor.pa.gov/wp-content/uploads/2020/05/20200527-TWW-green-phase-order.pdf (last visited June 12, 2020).

[9]  *See* Amendment to the Order of the Governor of the Commonwealth of Pennsylvania For Limited Opening of Businesses, Lifting of Stay At Home Requirements, And Continued Aggressive Mitigation Efforts, https://www.governor.pa.gov/wp-content/uploads/2020/06/20200604-TWW-amendment-to-yellow-phase-order.pdf (last visited June 12, 2020); Order of the Governor of the Commonwealth of Pennsylvania For the Continued Reopening of the Commonwealth, https://www.governor.pa.gov/wp-content/uploads/2020/06/20200604-TWW-amendment-to-green-phase-order.pdf (last visited June 12, 2020).

[10]  *See* Order of the Governor of the Commonwealth of Pennsylvania For the Continued Reopening of the Commonwealth, https://www.governor.pa.gov/wp-content/uploads/2020/06/20200611-TWW-amendment-to-green-phase-order.pdf (last visited June 12, 2020).

signatures from voters as a means of demonstrating voter support necessary to be placed directly on the general election ballot.  *See* 25 P.S. § 2911.

Until 2016, the signature requirement for political bodies in Pennsylvania was controlled by 25 P.S. § 2911.  In 2016, the U.S. Court of Appeals for the Third Circuit affirmed the judgment of this Court in *Constitution Party of Pa. v. Cortes* holding that the signature requirement in 25 P.S. § 2911(b), ***when coupled with*** 25 P.S. § 2937 which allowed an award of costs in signature validation challenges, substantially burdened political bodies' associational rights and together were unconstitutional as applied.  *See Constitution Party of Pa. v. Cortes*, 824 F.3d 386 (3d Cir. 2016).

On remand, the district court in *Constitution Party of Pa.* entered an Order on February 1, 2018 establishing the procedure for political body candidates to qualify for the general election ballot.  The February 1, 2018 Order directs that, "[u]ntil such time as the Pennsylvania Legislature enacts a permanent measure amending or modifying the process to place the plaintiff political bodies on the general election ballot and this change is signed by the Governor of Pennsylvania," nomination papers shall be due by August 1 and the number of signatures required would be substantially reduced as specifically set forth in the Order.  (Compl.

(ECF No. 1), Ex. A, p.1 & ¶ 1.)[11]  In addition, the Order directs that no candidate shall be assessed costs under 25 P.S. § 2937.  (*Id.* ¶ 3.)  Further, the Order states that it is "intended to replace the signature requirement imposed by 25 P.S. § 2911(b)."  (*Id.* ¶ 4.)  Pursuant to the February 1, 2018 Order, the deadline for Plaintiffs to submit nomination papers for the November 3, 2020 general election is August 3, 2020 (August 1 is a Saturday).  (*Id.* ¶ 1.)

Plaintiffs' Complaint asserts three claims under 42 U.S.C. § 1983.  They allege that the Court-Ordered ballot access requirements for minor political parties and for political bodies "[u]nder present circumstances" violate associational rights guaranteed by the First and Fourteenth Amendments, (Count I), violate rights guaranteed by the Equal Protection Clause of the Fourteenth Amendment (Count II), and violate the right to due process guaranteed by the Due Process Clause of the Fourteenth Amendment (Count III).  They seek a declaratory judgment (1) prohibiting enforcement of the supporting signature requirement for candidates for office for the November 3, 2020 general election; (2) directing Defendants to

---

[11]  The reduction in the number of signatures mandated by the February 1, 2018 Order is very substantial.  For example, under 25 P.S. § 2911(b), political body candidates for President and Vice-President would have required nearly 58,000 signatures to appear on the general election ballot in November 2020, but they require only 5,000 signatures under the February 1, 2018 Order.  In addition, whereas 25 P.S. § 2911(b) required a certain number of signatures from each county in statewide races, the February 1, 2018 Order eliminated the county distribution requirement altogether.  Further, the February 1, 2018 Order set the deadline for submitting nomination papers as August 1.  This is consistent with consent decrees in prior litigation which extended the deadline from "the second Friday subsequent to the primary," 25 P.S. § 2913(b), to August 1.  *See Baldwin v. Cortes*, 378 F. App'x 135, 137 (3d Cir. 2010).

accept their candidates' nomination papers for the November 3, 2020 general

election without requiring any supporting signatures from voters, and (3) directing

Defendants to place their candidates' names on the November 3, 2020 general

election ballot.  (Compl. at 26-27.)  Plaintiffs filed a motion for temporary

restraining order and/or preliminary injunction on May 19, 2020, requesting that

the Court direct Defendants to (1) accept their candidates' nomination papers for

the November 3, 2020 general election without requiring supporting signatures

from voters; and (2) place their candidates on the November 3, 2020 general

election ballot.  (Pls.' Mot. for Prelim. Inj. (ECF No. 3) at 1-2.)

## **ARGUMENT**

A preliminary injunction is an extraordinary remedy which should be

granted only in limited circumstances.  *Am. Tel. & Tel Co. v. Winback & Conserve*

*Program, Inc.*, 42 F.3d 1421, 1427 (3d Cir. 1994).  In determining whether to grant

a motion for a preliminary injunction, district courts consider four factors:  (1)

whether the movant establishes a reasonable probability of eventual success in the

litigation; (2) whether the movant will be irreparably harmed if relief is not

granted; (3) the possibility of harm to other interested persons from the grant or

denial of the injunction; and (4) the public interest.  *Reilly v. City of Harrisburg*,

858 F.3d 173, 176 (3d Cir. 2017) (citation omitted).  The two "most critical"

factors are probability of success on the merits and irreparable harm.  *Id.* at 179.

To establish a reasonable probability of success on the merits, the movant must demonstrate that "it can win on the merits." *Id.* With respect to irreparable harm, the movant must establish that it is "more likely than not" to suffer irreparable harm absent the requested relief. *Id.* If the likelihood of success and irreparable harm factors are satisfied, the district court proceeds to consider the third and fourth factors and to "determine[] in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Id.* at 179.

Where, as here, the relief sought "is mandatory and will alter the status quo, the party seeking the injunction must meet a higher standard of showing irreparable harm in the absence of an injunction." *Bennington Foods LLC v. St. Croix Renaissance Grp., LLP*, 528 F.3d 176, 179 (3d Cir. 2008); *see also Stein v. Cortes*, 223 F. Supp. 3d 423, 431 (E.D. Pa. 2016).

As demonstrated below, Plaintiffs have not and cannot satisfy any of the requirements for the mandatory injunction they seek.

### A.     Plaintiffs Have Not Established a Reasonable Probability of Success.

Plaintiffs maintain that they are entitled to a mandatory injunction requiring that their candidates' names be placed on the general election ballot without any threshold showing of support because "Pennsylvania [h]as [f]ailed to [p]rovide [t]hem with [a]ny [p]rocedure for [q]ualifying" for the ballot or, alternatively,

because "Pennsylvania's statutory scheme, as currently applied, cannot withstand constitutional scrutiny." (Pls.' Br. at 6-15.) Plaintiffs fail to establish and cannot establish a likelihood of prevailing on either of these theories.

First, Plaintiffs attempt to shoehorn their claims into the fact patterns in *Williams* and *McCarthy* by denying the existence of a procedure in Pennsylvania for political bodies to qualify for the general election ballot. (Pls.' Br. at 6-11.) However, there is a procedure. As Plaintiffs concede in the same section of their brief, "[t]he ballot access requirements established by this Court's February 1, 2018 order in *Constitution Party of Pa.* remain in effect, and they are substantially less restrictive" than prior requirements. (Pls.' Br at 9.) The existing Court-Ordered procedure distinguishes this case from *Williams*[12] where a combination of Ohio laws effectively foreclosed any party except the Republicans and Democrats from qualifying for the ballot and *McCarthy*[13] where a Texas law barred independents from the presidential ballot. In this case, Plaintiffs are urging this Court to enjoin the ***existing procedure*** and declare instead that qualifying for general election ballots more than a decade ago somehow demonstrates the significant modicum of support necessary for placement on the 2020 ballot. (Pl.'s Br. at 9-10.) This is plainly beyond the Court's authority. *See Clingman v.*

---

[12] *See Williams v. Rhodes*, 393 U.S. 23 (1968).

[13] *See McCarthy v. Briscoe*, 429 U.S. 1317 (1976).

*Beaver*, 544 U.S. 581, 586 (2005); *see also Esshaki v. Whitmer*, --- F. App'x ---, No. 20-1336, 2020 WL 2185553, at *2 (6th Cir. May 5, 2020) ("[F]ederal courts have no authority to dictate to the States how they should conduct their elections."). As the United States Court of Appeals for the Sixth Circuit recognized in staying a district court order enjoining state ballot access requirements in light of the COVID-19 pandemic, federal courts can enter positive injunctions that require compliance with existing state procedures but cannot rewrite those procedures. *See Thompson v. Dewine*, 959 F.3d 804, 812-13 (6th Cir. 2020).[14]

Second, Plaintiffs reverse course and argue that Pennsylvania's "statutory scheme, as currently applied" imposes a "severe" burden that is not justified by any government interest. (Pl.'s Br. at 11.) A burden is severe if it works to exclude legitimate candidates from the ballot. *See The Constitution Party of Pa. v. Cortes*, 116 F. Supp. 3d 486, 501 (E.D. Pa. 2015). There is no severe burden here. Notwithstanding the expired stay-at-home orders, Plaintiffs had and still have ample opportunity to achieve access to the ballot through the nomination paper process. The stay-at-home orders did not prohibit signature gathering. Further, the

---

[14] In *Rogers v. Corbett*, 468 F.3d 188, 197 (3d Cir. 2006), the Third Circuit rejected the argument that appearing on the ballot in prior elections should excuse compliance with the signature requirement. The Court explained that requiring support for current candidates through the signature requirement is justified by Pennsylvania's interest in preventing ballot clutter and ensuring viable candidates. *Id.*

orders were temporary and, as of June 5, were lifted in all 67 counties in Pennsylvania.  In addition to the 33 days which Plaintiffs had to collect signatures prior to March 23, 2020 when the first stay-at-home order went into effect, there are 60 full days between June 5 and August 3 to collect the signatures required by the February 1, 2018 Order—between 300 and 5000 signatures depending on the office.  This burden is not unreasonable, even during the COVID-19 pandemic. *See, e.g.*, *Storer v. Brown*, 415 U.S. 724, 740 (1974) ("gathering 325,000 signatures in 24 days would not appear to be an impossible burden"); *Rogers v. Corbett*, 468 F.3d 188, 196-97 (3d Cir. 2006) (gathering 67,070 signatures in 147 days between March 8 and August 1 not an unconstitutional burden); *see also* *Thompson*, 959 F.3d at 811 (five-week period to gather "hundreds of thousands of signatures" following rescission of COVID-related stay-at-home order not a severe burden); *Gottlieb v. Lamont*, --- F. Supp. 3d ---, No. 20-CV-0623, 2020 WL 3046205 (D. Conn. June 8, 2020) (not an unconstitutional burden to require candidate to obtain 1000 signatures in 16 days despite COVID-19 pandemic).[15]

It cannot be disputed that the Court-Ordered ballot access procedure at issue here is grounded in valid and important state interests, including the interest in avoiding ballot clutter and ensuring viable candidates, *Jenness v. Fortson*, 403 U.S.

---

[15]   This Court recently rejected a constitutional challenge to the signature gathering requirement brought by a *pro se* plaintiff in *Acosta v. Wolf*, No. 20-2528, 2020 WL 3077098 (E.D. Pa. June 10, 2020) (on preliminary screening under 28 U.S.C. § 1915(e)(2)).

11

431, 442 (1971); *Rogers*, 468 F.3d at 194 ("These interests have long been

recognized as valid ones."), and the interest in the orderly and efficient

administration of elections, *Clements v. Fashing*, 457 U.S. 957, 965 (1982);

*Thompson*, 959 F.3d at 811 ("[T]he deadlines allow them time to verify signatures

in an orderly and fair fashion, while also providing initiative proponents time to

challenge any adverse decision in court."). There is also no doubt that these

compelling and well-established state interests outweigh the less-than-severe

burden the signature requirement places on Plaintiffs even in the midst of the

pandemic and therefore Plaintiffs are not likely to prevail on the merits. *See*

*Thompson,* 959 F.3d at 811 (granting motion to stay preliminary injunction

because plaintiffs were unlikely to prevail on merits of claim that five-week period

to obtain "hundreds of thousands of signatures" was unconstitutional burden);

*Gottlieb*, 2020 WL 3046205, at *12 (denying preliminary injunction because

plaintiffs were not likely to prevail on merits of challenge to signature requirement

that they obtain more than 1000 signatures in 16 days).[16]

---

[16] Plaintiffs asserted three separate claims for relief in their Complaint, but their brief in
support of their motion for preliminary injunction only advances argument on the equal
protection claim. As such, Plaintiffs have not demonstrated any likelihood of success on any of
the other claims and these other claims cannot be the basis for any preliminary injunctive relief.
In any event, Plaintiffs cannot establish any right to relief on those claims. They contend in
Count I that the now lifted stay-at-home orders infringe on their freedom of association in
violation of the First Amendment. This is not correct. The stay-at-home orders served a
substantial government interest and did not prohibit signature gathering or other means of
campaigning. As a result, there was no First Amendment violation. *See Friends of Danny
DeVito v. Wolf*, No. 68 MM 2020, --- A.3d ---, 2020 WL 1847100 (Pa. Apr. 13, 2020), *petition*

Because Plaintiffs are seeking a mandatory injunction, they bear a "particularly heavy" burden of demonstrating a right to relief that is "indisputably clear." *Trinity Indus., Inc. v. Chicago Bridge & Iron Co.*, 735 F.3d 131, 139 (3d Cir. 2013). Plaintiffs have not come close to satisfying this burden. Beyond failing to establish an unconstitutional impediment to ballot access, they plainly lack standing. They allege only a possibility of future injury—that "it will remain difficult if not practically impossible to collect signatures" after the stay-at-home orders are lifted, Compl. ¶ 58—which is insufficient to give rise to standing. *See Reilly v. Ceridian Corp.*, 664 F.3d 38, 42-43 (3d Cir. 2011) ("allegations of hypothetical, future injury are insufficient to establish standing"); *Doe v. Nat'l Bd. of Med. Exam'rs*, 199 F.3d 146, 152-53 (3d Cir. 1999) ("at the preliminary injunction stage, allegations are not enough to support standing"). Plaintiffs do not and cannot prove "certainly impending" harm necessary for standing. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

---

*for certiorari filed*, No. 19-1265 (Apr. 27, 2020); *City of Renton v. Playtime Theaters, Inc.*, 475 U.S. 41, 47 (1986) ("content-neutral" regulation of exercise of First Amendment rights "are acceptable so long as they are designed to serve a substantial governmental interest and do not unreasonably limit alternative means of communication"). Plaintiffs allege in Count III that the now expired stay-at-home orders disrupted the ballot access procedure and therefore violated due process. They do not allege a deprivation of the right to vote or any liberty or property interest and do not challenge the fairness of any state procedure affecting any such right. There was no due process violation. *See generally Mathews v. Eldridge*, 424 U.S. 319, 332 (1976) (due process framework).

In addition, there is no basis for a claim under 42 U.S.C. § 1983. The signature requirements that Plaintiffs seek to avoid are imposed by federal court order, not state law, and therefore do not implicate Section 1983. *See District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973) ("actions of the Federal Government and its officers are . . . facially exempt from [1983's] proscriptions"). And any effort to revise or annul that order must be presented in the context of that proceeding. *See Celotex Corp. v. Edwards*, 514 U.S. 300, 313 (1995) ("until [the court of first instance's] decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected") (citations omitted).

At bottom, Plaintiffs' claims boil down to rank speculation that they might not procure sufficient signatures in advance of the August 3 deadline due to social distancing and fewer public events. (Pl.'s Br. at 12.) As the Sixth Circuit recognized in staying a district court order preliminarily enjoining certain Ohio ballot access requirements due to COVID-19, "private citizens' decisions to stay home for their own safety" are not state action and do not amount to unconstitutional restriction on ballot access. *Thompson*, 959 F.3d at 810. This reasoning applies equally here. There is no state-imposed restriction on signature gathering and the signature requirements for each office were and are reasonably

14

attainable.  Accordingly, Plaintiffs have no reasonable prospect of prevailing on the merits.[17]

## B.    Plaintiffs Have Not Demonstrated Irreparable Harm.

Plaintiffs also fall short of establishing that they are likely to suffer irreparable harm absent a mandatory injunction.  They allege that "it will remain difficult if not practically impossible to collect signatures after emergency measures are lifted." (Compl. ¶ 58.)  This is not enough to justify preliminary injunctive relief.  "Establishing a risk of irreparable harm is not enough.  A plaintiff has the burden of proving a clear showing of immediate irreparable injury." *ECRI v. McGraw-Hill, Inc.*, 809 F.2d 223, 226 (3d Cir. 1987) (citation omitted); *see also Kamdem-Ouaffo v. Task Mgmt., Inc.*, 792 F. App'x 218, 221 (3d Cir. 2019).  Plaintiffs have not alleged and cannot allege any facts demonstrating that the signature requirement is unattainable.  Moreover, they presume irreparable

---

[17] Plaintiffs cite various decisions addressing ballot access procedures in other states, (Pls.' Br. at 12-14), but the Pennsylvania election calendar is materially different and more liberal than the calendars in other states, due in part to the February 1, 2018 Order, and therefore adjustments made in other states are not required or appropriate here.  For example, the first stay-at-home order in Michigan went into effect on March 23, 2020 and continued through and after April 21, 2020 when signatures were due. *See Esshaki v. Whitmer*, No. 20-1336, 2020 WL 2185553, at *2 (6th Cir. May 5, 2020).  In Illinois, the window for collecting signatures opened on March 24, 2020, four days after the stay at home order was issued, and signatures are due on June 22, 2020. *Libertarian Party of Illinois v. Pritzker*, No. 20-CV-2112, 2020 WL 1951687, at **2-4 (N.D. Ill. Apr. 23, 2020).  In Utah, the stay home directive was issued on March 27, 2020 and remained in effect through the April 13, 2020 deadline for submitting signatures to appear on the primary ballot. *Garbett v. Herbert*, ---F. Supp. 3d ---, 2020 WL 2064101, at **2-3 (D. Utah. Apr. 29, 2020), *appeal filed*, No. 20-4051 (10th Cir. May 1, 2020).

harm merely because they claim a constitutional violation, (Pl.'s Br. at 16), but the signature requirement is not an unconstitutional burden standing alone or in combination with the now expired stay-at-home orders as demonstrated above. Without a recognizable legal harm, there is no irreparable harm. *Republican Party of Pa. v. Cortes*, 218 F. Supp. 3d 396, 410 (E.D. Pa. 2016). In short, there is no immediate irreparable injury justifying a preliminary injunction.

### C.   Granting Preliminary Injunctive Relief Would Be Contrary to the Public Interest and the Interests of Other Interested Parties.

Granting the mandatory preliminary injunction that Plaintiffs seek would impair and undermine the public interest for a host of reasons. As the Supreme Court recognized, enjoining a state from conducting elections pursuant to a constitutionally valid procedure "would seriously and irreparably harm the State." *Abbott v. Perez*, ___ U.S. ___, 138 S. Ct. 2305, 2324 (2018). Further, changing election rules by injunction risks voter confusion and may deter registrants from voting. *Republican Nat'l Comm. v. Democratic Nat'l Comm.*, ___ U.S. ___, 140 S. Ct. 1205, 1207 (2020) (per curiam) ("This Court has repeatedly emphasized that lower federal courts should ordinarily not alter the election rules on the eve of an election."); *Purcell v. Gonzalez*, 549 U.S. 1, 4-5 (2006) (per curiam) ("Court orders affecting elections, especially conflicting orders, can themselves result in voter confusion and consequent incentive to remain away from the polls. As an

election draws closer, that risk will increase.")  Finally, states have important interests in protecting the integrity of the electoral process, *John Doe No. 1 v. Reed*, 561 U.S. 186, 197 (2010), in avoiding ballot clutter and ensuring viable candidates, *Jenness*, 403 U.S. at 442; *Rogers*, 468 F.3d at 194, and in ensuring the orderly and efficient administration of elections, *Clements*, 457 U.S. at 965. Opening the general election ballot to everyone as Plaintiffs propose would threaten each of these valid and important interests.  The third and fourth factors thus tip conclusively against an award of injunctive relief.

### D.    The Balance of Equities Favors Defendants.

Plaintiffs have failed to establish a likelihood of success or immediate irreparable injury.  Nor have they shown that they will be harmed if required to satisfy a signature requirement that is constitutional.  Further, they cannot deny that Pennsylvania has a valid and compelling interest in avoiding ballot crowding, ensuring viable candidates, enforcing existing election procedures and fairly and orderly administering the general election.  The balance of the equities thus weighs overwhelmingly against issuing a mandatory injunction that disrupts the *status quo* and rewrites the procedure for ballot access.  Plaintiffs' motion for preliminary injunctive relief should be denied.

17

### E.    There Is No Basis To Waive the Bond Requirement.

Rule 65(c) of the Federal Rules of Civil Procedure provides that "[t]he court may issue a preliminary injunction . . . only if the movant gives security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained."  The Third Circuit has held that, unless there is no risk of monetary loss to the defendant, the failure of a district court to require a successful applicant to post a bond constitutes reversible error.  *Frank's GMC Truck Ctr., Inc. v. Gen. Motors Corp.*, 847 F.2d 100, 103 (3d Cir. 1988).  No exception to the bond requirement applies here.  If this Court were to order the injunctive relief sought by plaintiffs, there will certainly be increased administrative burdens and costs associated with complying with the order.  Therefore, a bond would be required.[18]

---

[18] The cases cited by Plaintiffs do not support their contention that a bond is discretionary in this Circuit.  In *Zambelli v. Fireworks Mfg. Co., Inc. v. Wood*, 592 F.3d 412, 426 (3d Cir. 2010), the Third Circuit held that "a district court lacks discretion under Rule 65(c) to waive a bond requirement except in the exceptionally narrow circumstance where the nature of the action necessarily precludes any monetary harm to the defendant, and . . . such bond shall be issued irrespective of any request by the parties."  The rule in the Sixth Circuit is apparently different, *see Moltan Co. v. Eagle-Picher Indus., Inc.*, 55 F.3d 1171, 1176 (6th Cir. 1995) (recognizing that "many circuits" have interpreted Rule 65(c) as "mandatory," but the rule in the Sixth Circuit is that the bond requirement is discretionary), but *Moltan Co.* does not apply here.

## **CONCLUSION**

For the reasons above, Plaintiffs have failed to make a clear showing of a right to mandatory preliminary injunctive relief and their motion should be denied.

Respectfully submitted,

/s/ Daniel T. Brier_____
Daniel T. Brier
Donna A. Walsh
Richard L. Armezzani

Attorneys for Defendants,
Governor Tom Wolf, Secretary of the
Commonwealth of Pennsylvania Kathy
Boockvar and Deputy Secretary for
Elections and Commissions
Johnathan M. Marks

Myers Brier & Kelly, LLP
425 Spruce Street, Suite 200
Scranton, PA 18503
(570) 342-6100

Date:  June 12, 2020

## **CERTIFICATE OF SERVICE**

I, Daniel T. Brier, hereby certify that a true and correct copy of the foregoing Memorandum of Law in Opposition to Plaintiff's Emergency Motion For Temporary Restraining Order and Preliminary Injunction was served upon the following counsel of record via the Court's ECF system, on this 12th day of June 2020:

> Drew Gray Miller, Esquire
> Anderson & Labovitz, LLC
> 428 Forbes Avenue, Suite 1901
> Pittsburgh, PA  15219
>
> Mark R. Brown, Esquire
> 303 E. Broad Street
> Columbus, OH  43215
>
> Oliver B. Hall, Esquire
> Center for Competitive Democracy
> P.O. Box 21090
> Washington, DC  20009
>
> Clifford B. Levin, Esquire
> Alex M. Lacey, Esquire
> Dentons Cohen & Grigsby P.C.
> 625 Liberty Avenue
> Pittsburgh, PA 15222-3152

> /s/ Daniel T. Brier_____
> Daniel T. Brier